■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LOUIS LEO BAX, Respondent. (Appeal No. 1.)—Appeal unanimously dismissed. Memorandum: At the close of the People's evidence in a prosecution for murder in the second degree, the court denied the defendant's motion to dismiss the indictment for failure of proof. The defendant presented evidence, including his own testimony, and then rested. The motion to dismiss was not renewed and the prosecutor thereafter swore three witnesses in rebuttal. During the eleventh day of the trial, the District Attorney sought a continuance until the following morning for the purpose of producing an additional witness. Upon granting the continuance, the court stated that the trial would resume "tomorrow morning at 9 a.m." and "then I can take summations and charge." It is clear that the court intended to submit the case to the jury. On the following morning, the Trial Judge convened the jury, the

defendant and counsel in the jury room, and inquired of the whole jury as to whether any of them had read a brief news article which appeared that morning on page 23 of the *Buffalo Courier Express.* The single column, five-inch-long article stated that it was expected that the case would be submitted to the jury that day; that the prosecutor was seeking a witness whom he would not identify; and that he was not sure that the witness would appear. In its final paragraph, the news account stated that the prosecutor had "reportedly been attempting to locate * * * the defendant's brother, Leo, and Albert Favaloro," both of whom were at the scene at the time of the alleged homicide. A similar article had appeared in the preceding evening's edition of the *Niagara Gazette.* In response to the court's inquiry, one juror indicated that he had read the *Courier* article; another stated that she had read part of it; and a third said that he had read the *Gazette* report. Despite the court's leading and suggestive questions which appear to have been calculated to elicit answers admitting of bias and prejudice, the inescapable conclusion to be drawn from the court's colloquy with the jurors is that the news articles had no effect upon the juror's capacity to deliberate the issues fairly and impartially. During the interrogation, however, one of the three jurors, with the apparent concurrence of another, stated that before the news story appeared he "couldn't understand why they didn't call" witnesses who were at the scene, and in response to the court's statement that it was the court's impression that the defendant was "holding back on something", the juror acknowledged: "I think I felt that way". Thereupon the court, *sua sponte,* and without affording either counsel an opportunity to be heard, declared a mistrial and announced "case dismissed". In explanation of its action and in disregard of the vigorous protestations of the three jurors that the news articles were meaningless to them, the court blindly assessed those articles as contaminating the jury to the extent that the defendant's right to a fair trial was destroyed. The posture of this case is perplexing, at the very least. Although three notices of appeal have been filed by the People, two of which were from oral orders which were never formalized in writing and entered, the only appeal which arguably might be considered is that taken from the denial of the People's motion to again place this case upon the Trial Calendar. On the argument of the motion, despite the court's clear intention to submit this case to the jury, as expressed on the day before the declaration of the mistrial, the Trial Judge recited several reasons why he had dismissed the case. Among them, in confusing fashion, were: jury prejudice based upon newspaper accounts; insufficiency of the Grand Jury evidence; errors committed by the court during trial; failure of the People to make out a prima facie case; and double jeopardy. While it is impossible to conclude with certainty the basis upon which the court denied the motion, the emphasis of the court's remarks indicates that what was contemplated was a trial order of dismissal. Thus viewed, the People's appeal is barred on double jeopardy grounds *(People v Brown,* 40 NY2d 381, 391, 393, cert den 429 US 975; see *United States v Jenkins,* 420 US 358, 370). It is of no avail to the People that the court erred in so precipitously declaring a mistrial or that it may have erred in dismissing the case. Whether the trial court labels its action a dismissal or a declaration of a mistrial is not dispositive. "The critical question is whether the order contemplates an end to all prosecution of the defendant for the offense charged. A mistrial ruling invariably rests on grounds consistent with reprosecution [citation omitted], while a dismissal may or may not do so. Where a midtrial dismissal is granted on the ground, correct or not, that the defendant simply cannot be convicted of the offense

charged, *Jenkins [United States v Jenkins, supra]* establishes that further prosecution is barred by the Double Jeopardy Clause" *(Lee v United States,* 432 US 23, 30). The People ask that we ignore the court's dismissal of the case and characterize the declaration of a mistrial as a proper exercise of discretion. Even if we were to be so accommodating as to cast aside such a material and determinative statement by the Trial Judge, the prosecutor on this record could not shoulder his heavy burden of demonstrating the "manifest necessity" required to justify the mistrial *(Arizona v Washington,* 434 US 497). The declaration of a mistrial was a clear abuse of discretion. The fact that two jurors had harbored some concern, based upon the record and dehors the newspaper articles, as to the failure of the defendant to call his brother and another as witnesses, with nothing more, was a shallow and inadequate basis for the court's abortive action. No effort was made to instruct the jurors as to the law to be applied to the failure of a party to produce a witness, nor was there inquiry as to whether the jurors would apply the law as given to them by the court. Indeed, there is nothing in this record to suggest that the jurors would have been incapable of applying a proper charge to their deliberations. While it is the grave responsibility of a Trial Judge to ensure a fair trial to a defendant in a criminal case, a mistrial is not so cavalierly to be declared. "Such a result is warranted only in those instances where, after an exhaustive and probing inquiry of each affected juror, the court is of the belief that a fair and impartial determination cannot be reached" *(People v Mordino,* 58 AD2d 197, 205). On the inconclusive record developed by the trial court here, it surely cannot be said that there was a likelihood that the jury could not render a "fair and objective verdict according to the evidence" *(People v Genovese,* 10 NY2d 478, 485; *Marshall v United States,* 360 US 310). Where a Judge, acting without the consent of the defendant, aborts the proceeding, the defendant has been "deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal" *(United States v Jorn,* 400 US 470, 484; *Matter of Ferlito v Judges of County Ct., Suffolk County,* 31 NY2d 416, 419; *Matter of Cardin v Sedita,* 53 AD2d 253, 259). In the absence of a motion by the defendant, the "doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings" *(United States v Jorn, supra,* p 485; cf. *Matter of Nolan v Court of Gen. Sessions,* 11 NY2d 114; compare *Simmons v United States,* 142 US 148). (Appeal from order of Niagara County Court—mistrial.) Present—Marsh, P. J., Simons, Dillon, Hancock, Jr., and Denman, JJ.