In the Matter of JOSEPH B. FERLITO, Petitioner, *v.* JUDGES OF THE COUNTY COURT, SUFFOLK COUNTY, et al., Respondents.

Second Department, April 24, 1972.

*Rosenberg, Rosenberg & Rockman (Harry Rosenberg* of counsel), for petitioner.

*George J. Aspland, District Attorney (Ronald E. Lipetz* of counsel), respondent in person.

*George W. Percy, Jr., County Attorney (Michael Gross* of counsel), for County Judges, respondents.

SHAPIRO, J. This is a proceeding pursuant to article 78 of the CPLR for a judgment prohibiting the respondents, the County Judges of Suffolk County and the District Attorney of Suffolk County, from proceeding with a retrial of the petitioner on an indictment heretofore returned against him by the Grand Jury of Suffolk County (Indictment No. 8-71).

The petitioner claims that a retrial would violate his constitutional right against being placed in jeopardy twice for the same offense. In opposition, the District Attorney preliminarily argues that an article 78 proceeding to obtain an order of prohibition does not lie and that the petitioner should be compelled to submit to a retrial and there raise the defense of double jeopardy. In this contention the District Attorney is in error, for prohibition is the traditional remedy where double jeopardy is claimed to exist (*Matter of Kraemer* v. *County Court of Suffolk County,* 6 N Y 2d 363; *Matter of Nolan* v. *Court of General Sessions,* 15 A D 2d 78, affd. 11 N Y 2d 114).

We thus reach the substantive issue whether a retrial of the petitioner would place him in double jeopardy within the constitutional meaning of that term.

Both the Federal and the New York State Constitutions, while using different language, afford a defendant the same protection against being twice put in jeopardy for the same offense. The Federal Constitution so far as here applicable reads: "nor shall any person be subject for the same offence to be twice put

in jeopardy of life or limb " (U. S. Const., 5th Amdt.). The New York Constitution, so far as here applicable, reads: " No person shall be subject to be twice put in jeopardy for the same offense " (N. Y. Const., art. I, § 6).

It is apparent that not every declaration of a mistrial prevents a retrial. When certain necessitous or exceptional circumstances arise, a mistrial may be warranted and its declaration is not deemed violative of the double jeopardy provisions of either constitution.

" The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. * * * What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments " (*Wade* v. *Hunter,* 336 U. S. 684, 688–689).

While "it is impossible to define all the circumstances, which would render it proper to interfere " by declaring a mistrial, there is no right to take such action unless " there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated " (*United States* v. *Perez,* 9 Wheat. [22 U. S.] 579, 580).

In *United States* v. *Jorn* (400 U. S. 470, 485) the court said: " the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings."

And the court further said (p. 484): "For the crucial difference between reprosecution after appeal by the defendant and reprosecution after a *sua sponte* judicial mistrial declaration is that in the first situation the defendant has not been deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal. On the other hand, where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his ' valued right to have his trial completed by a particular tribunal.' See *Wade* v. *Hunter,* 336 U. S. 684, 689 (1949)."

In this case a trial by jury was waived and the cause proceeded as a nonjury case. On December 2, 1971, the first day of the trial, a police witness testified for the People and was extensively cross-examined by defense counsel. The following morning the Trial Judge held a conference in his chambers with opposing counsel. He advised them that during the preceding evening he recalled that the petitioner's father was acquainted with his (the Judge's) cousin and that the father had spoken to the cousin about the petitioner's problems. Thereafter the petitioner's father telephoned the Judge's chambers to complain about problems that his son was encountering with police. He was advised to speak to his son's attorney. The Judge had neither seen nor spoken to the petitioner or his father prior to the trial.

The Trial Judge thereupon disqualified himself, stating:

" I, for the record, will state that I have, up until the beginning of this trial, never, to my knowledge, ever seen this defendant or his father or spoken to them. But I do feel that because I now recall this incident, and especially since the defendant has seen fit to waive the jury in this case, *that perhaps it would be improper for me to adjudicate this matter.* And, consequently, because of all of the facts that I have spread on this record, I feel that I should disqualify myself, and I'm going to disqualify myself *sua sponte.*

" Consciously and knowingly I would never adjudicate any matter that's before me other than on the merits. *But being a human being, perhaps the recalling of this incident could in some conceivable way have an affect [sic] upon my judgment.* And since I feel that perhaps even unconsciously it might have an affect [sic] upon my judgment and thereby deprive me of the opportunity of deciding this matter solely on the facts and the law and without any extraneous matters interfering with my judgment, I feel that in the interests of justice I should disqualify myself, and I do disqualify myself '' (emphasis supplied).

It should be noted that the Judge never said, or even intimated, that he had formed an opinion as to the petitioner's guilt or innocence and that he merely thought " that *perhaps* it would be improper for me to adjudicate this matter,'' because " this incident *could* in some conceivable way have an effect upon my judgment.'' Such " iffy '' reasons for declaring a mistrial and thereby subjecting a defendant to the harassment and expense of a second trial cannot be given acceptability.

Defense counsel strenuously objected and placed the court on notice that if a mistrial were declared the petitioner would

oppose a retrial on the ground of double jeopardy. Time and time again, he stated his desire that the trial proceed, saying among other things: "This is a situation that I feel would be detrimental to the rights of my client. It would expose him to double jeopardy. * * *

"I think that any attempt of the district attorney to retry this case under these circumstances would constitute double jeopardy and violation of both the United States and the State Constitution. And I intend to make the most of it. And, quite frankly, that's my position. * * *

"Under the circumstances, my position is firm, and I'm not changing it one iota."

Despite this reiterated opposition of the petitioner to the declaration of a mistrial, the court then said, "All right, under the circumstances I hereby order a mistrial and I hereby order this matter placed on the calendar for a retrial."

It is always unfortunate when a trial is aborted and the People are deprived of their right to have the issues determined on the merits — particularly in a case like this where the District Attorney neither sought nor moved for a mistrial — but the "fact that the adherence to the constitutional provision in a particular case may frustrate the rights of the People to a conviction is immaterial" (*Matter of Nolan* v. *Court of Gen. Sessions,* 15 A D 2d 78, 84, *supra*), for the constitutional rights of a defendant may not be whittled away by fine spun distinctions in an effort to save what a Trial Judge has done.

Not to be placed in double jeopardy is not a matter of grace but of right. In this case to permit the State to retry the petitioner would be debasing and defiling the very provisions of our Federal and State Constitutions, which concern themselves with protecting the individual in his basic human right not to be harassed, or perhaps even impoverished, by successive prosecutions for the same offense (*People* v. *Ercole,* 4 N Y 2d 617, 621) and, as Mr. Justice HARLAN noted in *United States* v. *Jorn* (400 U. S. 470, 483, *supra*):

"Reprosecution after a mistrial has unnecessarily been declared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action."

The cases relied upon in the dissenting opinion do not compel a different result. Here, the claimed manifest necessity used to justify aborting the trial was that an incident in which the Trial Judge played no direct part could, in some conceivable way, affect his judgment. An analysis of the cases and texts cited

in the dissent does not support the proposition that there was such manifest necessity in this case. In *Wade* v. *Hunter* (336 U. S. 684, *supra*), which involved a general court-martial in war-time, the tactical situation of the rapidly advancing Third Army required the presence of the court-martial officers at their military functions.

The textual analyses in American Jurisprudence and Corpus Juris Secundum involve objective examples of necessity, such as the illness or incapacity of the Judge, of a juror, or of the defendant, or instances of tampering with jurors, actual bias of a juror, fraud or perjury on the part of a juror, or the formulation by a juror of a preconceived opinion as to the merits of the case. No such instances of factual necessity requiring a mistrial are present here. In *State* v. *Romeo* (43 N. J. 188) the necessity requiring the declaration of a mistrial was the actual bias of a juror.

In *State* v. *Puckett* (92 Ariz. 407) manifest necessity was present, as the Trial Judge felt he had been so affected by a newspaper article " that he couldn't give the fair and impartial consideration which would be required of him sitting as the trier of fact as well as the law " (p. 140).

The case of *State* v. *Slorah* (118 Me. 203) does no more than state the rule that the introduction of evidence or the exposure of the jurors to matters likely to affect their ability to render an impartial verdict is cause for a mistrial. The Maine courts have interpreted the rule to require " more than a theoretical danger of prejudice " (*State* v. *Warner*, 237 A. 2d 150, 164 [Me.]). Here, however, there is not even such a theoretical danger. In cases such as *Slorah* (*supra*) the Trial Judge must determine necessity by examining the *probability* of juror bias. In this nonjury case we are not concerned with such probabilities, but only with whether there was in fact actual bias. The Trial Justice here made no assertion that he was in fact biased or prejudiced in any way.

Under the circumstances, we refuse to erode the simple common-law maxim, later given expression in both our Federal and State Constitutions, *nemo debet bis puniri pro uno delicto* (no man ought to be punished twice for one offense). We therefore grant the petitioner's application for a judgment prohibiting the respondents from retrying him on Indictment No. 8-71 or upon any other indictment based upon the same facts.

MARTUSCELLO, J. (dissenting). The issue is whether a Trial Judge's doubt that he can impartially try a defendant in a criminal case, without a jury, constitutes such " manifest necessity "

for a mistrial that a retrial will not violate the constitutional bar against double jeopardy.

The petitioner (hereinafter called the defendant) was indicted on multiple counts of sale and possession of narcotics. The People's bill of particulars said the crime was committed at 46 Saltaire Road, *Copiague*. Before the trial commenced, the defendant waived a jury and consented to a trial before the court alone. At the trial, the People's first witness, a police officer, testified that the crime was committed at 46 Saltaire Road, *Lindenhurst*. The next morning, the Trial Judge called a conference in chambers with the prosecutor, the defendant and his attorney and made the following statement on the record:

"[L]ast night in thinking about this case, and after having learned that this defendant lives in Lindenhurst, and after having learned that the defendant has a possible alibi defense, and that some of the witnesses who will appear for him as alibi witnesses reside in Connecticut, I then recalled and it became apparent to me that several months ago, approximately several months ago either in the beginning of this year or latter part of last year, that this defendant's father is acquainted in some way with a cousin of mine who is in business in Bridgeport, Connecticut. And apparently he had spoken to my cousin about the problems of this defendant, his son.

" And after having spoken to my cousin, he then took it upon himself — that is the defendant's father — to call my chambers. And I believe it was on a Saturday during the day while I was in chambers working on other matters with my law secretary * * *. And that he called my chambers and my secretary spoke to him. Apparently he explained to my law secretary that his son, the defendant in this case, was being harassed by the police, and apparently he had been arrested for harassment and/ or resisting arrest. He in some way wanted to press a complaint about police harassment.

" My law secretary explained this to me, and then I inquired of my law secretary as to whether or not he had an attorney. And my law secretary reported back to me that he did. And then I told my law secretary to tell him that if he had any such complaint, that it should be processed through his counsel, and that it would serve no constructive purpose to speak to me about it. That was the sum and substance of the conversation.

" I, for the record, will state that I have, up until the beginning of this trial, never, to my knowledge, ever seen this defendant or his father or spoken to them. But I do feel that because I now recall this incident, and especially since the defendant has seen fit to waive the jury in this case, that perhaps it would

be improper for me to adjudicate this matter. And, consequently, because of all of the facts that I have spread on this record, I feel that I should disqualify myself, and I'm going to disqualify myself sua sponte.

" Consciously and knowingly I would never adjudicate any matter that's before me other than on the merits. But being a human being, perhaps the recalling of this incident could in some conceivable way have an affect [*sic*] upon my judgment. And since I feel that perhaps even unconsciously it might have an affect [*sic*] upon my judgment and thereby deprive me of the opportunity of deciding this matter solely on the facts and the law and without any extraneous matters interfering with my judgment, I feel that in the interests of justice I should disqualify myself, and I do disqualify myself."

The defendant's attorney objected, arguing that he was willing to continue with the trial and that the defendant would be exposed to double jeopardy if a mistrial were declared and he were later retried. Overruling the objection, the court declared a mistrial and set the case down for retrial. The defendant then brought this proceeding for an order of prohibition, urging that the retrial would subject him to double jeopardy.

In my opinion there is no merit in the proceeding and it should be dismissed. It is well settled that a defendant is not unconstitutionally subjected to double jeopardy by a retrial if the first trial was aborted because of unforeseeable circumstances that made its termination a manifest necessity and its continuation a disservice to the ends of public justice (*Wade* v. *Hunter,* 336 U. S. 684, 688–689; *United States* v. *Perez,* 22 U. S., 9 Wheat. [22 U. S.] 579; *United States* v. *Jorn,* 400 U. S. 470, 485). "It is impossible to define all the circumstances, which would render it proper " to declare a mistrial, without subjecting a defendant to unconstitutional double jeopardy by a retrial (*United States* v. *Perez, supra,* p. 580). But various holdings by the courts may serve as guidelines. Thus, illness of the Judge or defendant will justify a mistrial and the defendant may be retried without exposing him to double jeopardy (21 Am. Jur. 2d, Criminal Law, § 197; 22 C. J. S., Criminal Law, § 259). Illness of a juror, or death or serious illness in a juror's family, have been held sufficient cause for a mistrial and subsequent retrial without unconstitutional impairment of the defendant's rights (21 Am. Jur. 2d, Criminal Law, §§ 202, 203; 22 C. J. S., Criminal Law, § 259). The same holdings have been made where the mistrial was declared because of misconduct or disqualification of a juror " of a character that threatens to frustrate justice ";

where it was declared because an inqury showed that a juror was interested in the defendant or so biased that he was unfit to sit on the case; and where it was declared because circumstances showed that a fair, unbiased trial could not be had (21 Am. Jur. 2d, Criminal Law, §§ 198, 199; 22 C. J. S., Criminal Law, § 258, p. 672, § 259).

Practically on all fours with the case at bar are *State* v. *Puckett* (92 Ariz. 407) and *State* v. *Romeo* (43 N. J. 188). In *Puckett* the defendant waived a jury and was being tried by the court alone; after the trial started, a local newspaper published an article implying that the Trial Judge's decision would be influenced by his political party affiliation; and because of this article the Trial Judge declared a mistrial and directed reassignment of the case to another Judge for retrial. The Supreme Court of Arizona, holding that the retrial would not unconstitutionally subject the defendant to double jeopardy, said this (pp. 409–410):

"It is the intent of our rules and statutes * * * that cases be tried by judges who are not biased or prejudiced in any particular. * * * where a judge finds himself in fact disqualified he not only may but should disqualify himself on his own motion.

"Judge Farley felt that the article had so affected him that he couldn't give the fair and impartial consideration which would be required of him sitting as the trier of fact as well as the law in the case. We find that this in effect constituted what would amount to prejudice on the part of a juror, and therefore a legal reason did exist for Judge Farley to declare a mistrial. Therefore the defendant could not have been in jeopardy, and a new trial should * * * [be] had."

In *Romeo* (*supra*) each juror, when selected, denied acquaintance with the defendant; at the end of the first day of the trial, one of the jurors learned that his brother-in-law knew the defendant; the three of them (juror, brother-in-law and the defendant) belonged to the same social organization; and the next morning that juror privately told the Judge about this. The Judge, after questioning the juror in chambers, with both counsel present, concluded that the juror could no longer sit as an impartial juror because of what he had learned; and he excused the juror and declared a mistrial over the objection of defense counsel. Overruling the defendant's contention that a retrial would subject him to double jeopardy, the Supreme Court of New Jersey held that the requirement of "'an absolute or an overriding necessity'" for the mistrial was met "and

another trial is not barred where the mistrial is occasioned by the necessary disqualification of a juror for bias '' (*State* v. *Romeo, supra,* p. 196).

*State* v. *Slorah* (118 Me. 203) similarly involved a claim of double jeopardy after a mistrial had been declared because of an incident that occurred in the jury's presence. Discussing the question of '' the extent to which the courts may go in preventing a defeat of justice '' by declaring a mistrial, the court said this (p. 211): '' To render a verdict void in civil cases it need not appear that the jury was actually prejudiced, biased or influenced by the occurrence. If it may have affected their ability to render an impartial verdict, it is sufficient.  *  *  * We think the same considerations should apply in criminal cases whether it might affect adversely the State or the respondent *  *  *. Both are entitled to a fair trial.''

It seems clear to me that in the present case the declaration of a mistrial by the Trial Judge was a scrupulously correct and commendably proper exercise of discretion, since in no other way could he be certain that the ends of public justice and the rights of both the defendant and the People to a fair trial would not be imperiled. Once he recalled the incident of the improper call to his chambers by the defendant's father, he obviously became unsure that he could objectively and impartially decide the issues of fact and law in this case. So feeling, it was not merely proper that he withdraw from the case and terminate the trial; it was mandatory that he do so (*State* v. *Puckett,* 92 Ariz. 407, *supra*; see, also, *State* v. *Romeo,* 43 N. J. 188, *supra*; *State* v. *Slorah, supra*). And the termination of the trial for that reason would not result in unconstitutional double jeopardy when the defendant is retried, since there plainly was a manifest necessity that the mistrial be declared (*Puckett, Romeo, Slorah, supra*; 21 Am. Jur. 2d, Criminal Law, §§ 198, 199; 22 C. J. S., Criminal Law, §§ 258, 259).

It should further be noted that here involved were not only the rights of the immediate parties to a fair trial, but also the '' ends of public justice '' and the integrity of the court which, like Caesar's wife, must be above suspicion. Here, the Trial Judge would have been impaled upon the horns of a dilemma had he continued the trial to its conclusion; if he were to find the defendant not guilty, he might well be suspected of '' having been reached ''; and if he were to find the defendant guilty, the latter might well believe he was being punished for his father's improper conduct in calling the Judge, or, perhaps, that the Judge was improperly '' leaning over backwards '' to

protect his own reputation. In short, if the Trial Judge had continued with the trial he could have been subject to suspicion and criticism no matter which way he decided the issue of guilt.

The defendant's right to be protected from "vexations and successive prosecutions * * * should not defeat the accomplishment of justice" (*People* v. *Ercole,* 4 N Y 2d 617, 621). And his "valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments" (*Wade* v. *Hunter,* 336 U. S. 684, 689, *supra*).

I conclude that in this case there was a manifest necessity for the mistrial; and the defendant may properly be retried without unconstitutionally subjecting him to double jeopardy. Therefore this proceeding for a judgment of prohibition should be dismissed.

MUNDER, Acting P. J., and CHRIST, J., concur with SHAPIRO, J.; MARTUSCELLO, J., dissents and votes to dismiss the proceeding, with an opinion, in which BENJAMIN, J., concurs.

Judgment of prohibition as prayed for by petitioner granted, without costs.