In the Matter of James Cardin, Petitioner, v Joseph A. Sedita et al., Respondents.

Fourth Department, July 12, 1976

*Markel, Trammell & Santa Lucia (Sheldon Markel* of counsel), for petitioner.

*Edward C. Cosgrove, District Attorney (Judith Manzella* of counsel), for respondents.

GOLDMAN, J. In this article 78 proceeding, originating in this court, petitioner seeks a judgment of permanent prohibition to bar his retrial on a charge of possession of a controlled substance in the third degree. The first trial was terminated when the court *sua sponte* declared a mistrial over the defendant's objection, after the jury had been sworn and six prosecution witnesses had testified. Petitioner's principal contention, and the only one we need consider, is that a retrial would subject him to double jeopardy (US Const, 5th Amdt; NY Const, art I, § 6; CPL 40.20, subd 1).

The drugs to which the possession charge had reference were seized in petitioner's apartment when police went there with warrants to arrest him and another occupant for narcotic sales which allegedly occurred some five months earlier. Charges based on those sales were pending against petitioner at the time of his trial on the possession charge. In a ruling after a pretrial *Sandoval* hearing *(People v Sandoval,* 34 NY2d 371), the court forbade inquiry into the pending sale charges. When defense counsel expressed concern that police witnesses would mention those charges in explaining their presence at petitioner's apartment, the court ruled that the police witnesses could "say that they were there to execute warrants" but could not reveal the nature of the warrants. The prosecutor expressly agreed to instruct his witnesses "that they will not say what the warrants were for".

During the trial, the court's ruling was violated by two successive police witnesses. The first violation occurred when the People's fifth witness was asked on cross-examination whether he had thought he would have to testify regarding the possession charge. He answered: "Yes. Well, I already had charges, sale charges, which I thought were stronger than the possession". Thereupon the defense, out of the presence of the jury, moved for a mistrial. In response to questions by the court, the witness said he did not remember whether the prosecutor had told him not to talk about the charges underlying the arrest. The prosecutor said he "certainly thought" he had so instructed the witness. The court reprimanded the witness for answering unresponsively, and instructed him not to say why he was at the apartment "outside of the execution of a warrant", and not to "refer to any underlying charges". The mistrial motion was denied, the court stating that it was

not clear what the reference to "sale charges" meant. The next police witness violated the ruling during his direct testimony, when he was asked what happened after petitioner opened the door. He gave this response: "The defendant opened the door and he was placed under arrest for sale of narcotics or controlled substances by members of the Sheriff's Department". Again the jury was excused. Defense counsel's first thought was to move for a mistrial, but he then asked the court to reserve decision on the motion overnight so that he could consult with his client. When the prosecutor admitted that he had neglected to instruct his witness not to disclose the reason for the arrest, defense counsel moved for dismissal of the indictment with prejudice. The court reserved decision on both the dismissal motion and the mistrial motion.

The following morning, defense counsel stated that his client had chosen not to seek a mistrial because he could not afford a retrial and also because the prosecution was presenting a weak and ill-prepared case that seemed to be making a poor impression on the jury. The court nevertheless ordered a mistrial, over the exception of both parties, stating that because of the "misbehavior" of the prosecutor any conviction would "no doubt be reversed on appeal". The motion to dismiss the indictment was denied, although the court termed the prosecutor's conduct "a grave violation". The court also ruled that because the mistrial was due to the prosecutor's fault, defendant's expenses on any retrial must be paid from public funds. Some three months after the mistrial was declared, the People moved the case for retrial and the instant petition followed.

Despite decisions which stress the exceedingly limited availability of prohibition relief in criminal matters (*Matter of Nigrone v Murtagh*, 36 NY2d 421; *Matter of State of New York v King*, 36 NY2d 59), prohibition retains its traditional function as a means of raising the question of double jeopardy (*Matter of Kraemer v County Ct. of Suffolk County*, 6 NY2d 363, 365; *Matter of State of New York v King, supra*, p 64). Since respondents rightly concede that jeopardy had attached at the first trial before it was aborted (*People v Scott*, 40 AD2d 933, 934), we proceed directly to the question whether the court erred in declaring a mistrial. If so, then this case clearly qualifies for prohibition relief to bar reprosecution (see, *Matter of Ferlito v Judges of County Ct. of Suffolk County*, 31 NY2d 416, affg 39 AD2d 17; *Matter of Art v City Ct. of City of*

*Rochester,* 35 AD2d 1062; *Matter of Snee v County Ct. of County of Cayuga,* 31 AD2d 303; cf., *Matter of Nolan v Court of General Sessions of County of N. Y.,* 11 NY2d 114).

The double jeopardy prohibition aims to protect the defendant's "basic human right not to be harassed, or perhaps even impoverished, by successive prosecutions for the same offense" *(Matter of Ferlito v Judges of City Ct. of Suffolk County,* 39 AD2d, at p 21, *supra).* When a court declares a mistrial over the defendant's objection, the reason must therefore be "a necessitous one, actual and substantial" *(Matter of Nolan v Court of General Sessions of County of N. Y., supra,* at p 118); otherwise the double jeopardy prohibition bars retrial. It has long been settled that the court's power to declare a mistrial *sua sponte* "ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes", and only when the court determines in the exercise of its sound discretion that "there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated" *(United States v Perez,* 9 Wheat [22 US] 579, 580; see, *Illinois v Somerville,* 410 US 458, 462-463; *Wade v Hunter,* 336 US 684, 689-690).

Because each case turns on its particular facts, it is not possible to compile an exhaustive list of the circumstances that will constitute "manifest necessity". Nevertheless, there are some situations in which it is well settled that a second trial does not violate the double jeopardy prohibition, such as when the first jury is unable to agree on a verdict *(United States v Perez, supra,* at p 579), or when the first trial is interrupted by the illness of the Judge *(People ex rel. Brinkman v Barr,* 248 NY 126), essential court personnel *(People ex rel. Epting v De Voe,* 309 NY 818), or the complaining witness *(People v Kelly,* 9 NY2d 697). On the other hand, retrial was barred in a case where the Judge in a nonjury trial declared a mistrial *sua sponte* over vigorous defense objection because of the remote and theoretical possibility that factors including the acquaintance of a relative of the Judge with a relative of the defendant might color his view of the case. Where the Judge did not claim that those factors actually biased or prejudiced him, there was no "manifest necessity" for the mistrial *(Matter of Ferlito, supra).* Similarly, in *Matter of Nolan v Court of General Sessions of County of N. Y.* (11 NY2d 114, *supra),* the court's doubts about the legality of the mode of trial to which the parties had stipulated were held

insufficient to justify an order vacating the stipulation after an 8-month delay and directing a retrial. In *Matter of Snee v County Ct. of County of Cayuga* (31 AD2d 303, *supra)* we found that the asking of an arguably improper question by defense counsel did not give rise to "extreme or absolute necessity" (p 307) for the court's *sua sponte* declaration of mistrial, when any prejudice from the question could have been averted by a jury instruction. In *Matter of Art v City Ct. of City of N. Y.* (35 AD2d 1062, *supra),* we again had a fact situation which required us to hold that a court's improper *sua sponte* mistrial declaration barred retrial. There two defendants were tried together upon cross complaints that each had assaulted the other, and a mistrial was declared after the proofs were closed, for the reason that it was error to permit the cases to be tried together. That reason, we concluded, was not "'necessitous * * * actual and substantial'".

The instant respondents, noting the trial court's stated belief that a conviction would "no doubt" have been reversed on appeal, rely on *Illinois v Somerville* (410 US 458, 471) for the proposition that "where the declaration of a mistrial * * * aborts a proceeding that at best would have produced a verdict that could have been upset at will by one of the parties, the defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice". *Somerville,* however, is distinguishable on its facts. There the mistrial was prompted by the discovery of a defect in the indictment which, under Illinois law, was "jurisdictional", not curable by amendment and not waivable by the defendant's failure to object. Any judgment of conviction upon that indictment was thus subject to inevitable and certain reversal. In the circumstances, the court concluded that the ends of public justice would be defeated by insistence that the trial proceed to its pointless conclusion. In the present case, the errors which prompted the mistrial do not rise to the level of jurisdictional defects. Moreover, as petitioner concedes, his vigorous opposition to the mistrial ruling amounted to a waiver of any right to rely on those errors on appeal. Even if the errors were not waived, it would be mere speculation at this juncture to say that they would have required reversal. If, for example, the trial had continued and defendant had taken the stand, the impact of the improper references to narcotics sales might have been blunted by properly admitted evidence of prior crimes and immoral acts.

On the present, incomplete record, it cannot be said with any assurance that the errors would not have proved harmless under the standards of *People v Crimmins* (36 NY2d 230).

*Gori v United States* (367 US 364), while closer to the present case than *Somerville (supra)* is still readily distinguishable. There the trial court, on its own motion, precipitously declared a mistrial for the apparent reason that "the prosecuting attorney's line of questioning presaged inquiry calculated to inform the jury of other crimes by the accused" (p 366). Holding that the double jeopardy prohibition did not bar retrial, the court recognized that a Trial Judge has discretion to declare a mistrial when, for reasons he deems compelling, "the ends of substantial justice cannot be attained without discontinuing the trial" (p 368). There are, however, at least two important differences between *Gori* and the case at bar. First, the defendant there made no objection when the mistrial was declared. Secondly, the court there found that the mistrial "clearly" was "granted in the sole interest of the defendant", and strongly intimated that the result would have been different in a case where the mistrial would "help the prosecution, at a trial in which its case is going badly, by affording it another, more favorable opportunity to convict the accused" (367 US, at p 369). Here it can hardly be said that the mistrial was "in the sole interest of the defendant", in light of his willingness to have the trial proceed despite the errors, based in part on his able counsel's assessment that the case was going well for the defense.

CPL 280.10 sets forth three subdivisions dealing with a motion for a mistrial. The first concerns the motion of the defendant, the second the motion of the People and the third provides that a mistrial must be granted "[u]pon motion of either party or upon the court's own motion, when it is physically impossible to proceed with the trial in conformity with law". In the instant case there was no physical impossibility to proceed. Nevertheless, it cannot be concluded that CPL 280.10 has abrogated the principle that a court may declare a mistrial, even over the defendant's objection, when in the exercise of a sound and cautious discretion it determines that the ends of justice would otherwise be defeated *(Matter of Napoli v Supreme Ct. of State of N. Y.,* 40 AD2d 159, affd on opn below, 33 NY2d 980).

The contrary argument, however, is worth considering. The scheme of CPL 280.10 is to grant the defendant the right to a

mistrial on relatively lenient terms, while imposing stricter terms on the prosecutor, and still stricter terms on the court. This is in contrast to predecessor statutes, which merely granted jurisdiction to grant mistrials to the Supreme Court (Code Crim Pro, § 22, subd 7) and County Court (Code Crim Pro, § 39, subd 14) and authorized the granting of a new trial when the first jury has been discharged for "accident or other cause" (Code Crim Pro, § 430). On policy grounds there is much to be said for a statute that would restrict the court's authority to grant a mistrial on motion of any party other than the defendant. Such a statute would help avoid this situation where a well-meaning Judge overreacts to a trial occurrence which he deems prejudicial to the defense, declares a mistrial, and thereby gives the nonconsenting defendant a double jeopardy defense.

In any case where a mistrial is declared without the consent of the defendant, he is necessarily "deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal" *(United States v Jorn,* 400 US 470, 484). That option attains special importance in such a case as this, where the defendant believed that the jury, for reasons untainted by bias, corruption or chicanery, was "favorably disposed to his fate" *(United States v Jorn, supra,* at p 486). In these circumstances, we are constrained to conclude that the court improvidently exercised its discretion when it declared a mistrial over the defendant's objection. On this record we find no manifest necessity nor any consideration of public justice sufficient to override this defendant's "valued right", which he so diligently strove to assert, "to have his trial completed by a particular tribunal" *(Wade v Hunter,* 336 US 684, 689). The double jeopardy prohibition therefore shields this defendant from a second prosecution for the crime that was the subject of the aborted first trial. Defendant's petition should be granted and he should have judgment of permanent prohibition.

In light of our resolution of the double jeopardy question, it is unnecessary to review the order which denied defendant's motion for dismissal of the indictment on grounds of prosecutorial misconduct.

CARDAMONE, MAHONEY, DILLON and WITMER, JJ., concur.

Petition unanimously granted, without costs, and judgment

of prohibition entered in accordance with opinion by GOLDMAN, J.