STATE of Maine

v.

George PIERCE.

Supreme Judicial Court of Maine.

Argued March 18, 1983.

Decided April 11, 1983.

David M. Cox, Dist. Atty., Margaret Kravchuk (orally), Gary F. Thorne, Asst. Dist. Attys., Bangor, for plaintiff.

McCue & Lunn, Lawrence A. Lunn (orally), Bangor, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, CARTER, VIOLETTE and WATHEN, JJ.

GODFREY, Justice.

George Pierce, charged with Class B aggravated assault, 17–A M.R.S.A. § 208 (1983), was tried before a justice of the Superior Court, Penobscot County, on March 29, 1982. The trial justice *sua sponte* ordered a mistrial while the first witness for the prosecution was being examined. Before retrial, defendant successfully moved to dismiss the indictment on the ground that a retrial would violate his right to be free from double jeopardy under Article 1, § 8 of the Maine Constitution and the fifth amendment of the United States Constitution. From the judgment of the Superior Court dismissing the indictment, the state appeals pursuant to 15 M.R.S.A. § 2115–A (1980 & Supp.1982). We sustain the appeal and vacate the judgment of the Superior Court.

On August 4, 1981, defendant was indicted for Class B aggravated assault, 17–A M.R.S.A. § 208. His jury-waived trial began and ended on March 29, 1982. As the prosecutor was finishing his direct examination of the state's first witness, the trial justice received a list of witnesses for the case. After examining the list, the justice told both counsel that she recognized two of the witnesses from prior court appearances. The following discussion took place.

THE COURT: Before you start, I hadn't received a list of witnesses previously. I see I'm getting one now. It's no great problem except, for example, Wendall Bubar I know quite well, that's Jeff. He's been in juvenile court a lot.

Now there's somebody that's one of yours that I recognize; what is his name?

[DEFENSE COUNSEL]: Glen Pierce.

THE COURT: He's been in Lincoln Court a lot and probably I should have disclosed that at some point.

I would assume that I could deal with this without too much problem but if this is going to rise and fall on Jeff Bubar's credibility, I'd have to say that I have an opinion of it; already, preconceived; and I think that that is a problem and probably should result in a mistrial.

At that point, however, she said she would not declare a mistrial unless the defendant moved for one. A recess was taken to give defendant time to consider whether he would move for a mistrial.

After the recess, defendant declined to do so. Without moving for a mistrial, the prosecutor then expressed his concerns about proceeding with the trial in the circumstances. The trial justice responded by once again expressing concern that her prior knowledge of witness Bubar might have an impact. She expressed concern also about whether the double jeopardy clause would bar retrial if she were to declare a mistrial *sua sponte*. The trial justice discussed with the prosecutor whether the double jeopardy clause would bar a retrial in the circumstances.

At the conclusion of the discussion, the trial justice asked the state whether it was moving for a mistrial. The prosecutor replied that he was only expressing his thoughts on the issue and not moving for a mistrial. Defense counsel then interjected the following:

> My interest and role here is to protect the rights of my client. I don't feel he's fairly accused in this particular matter, and I feel that the outcome and the entire state's case rests on the testimony of Jeff Bubar and it's been my position all along. And I feel to protect the best interests of my client I shall not move for a mistrial.

Immediately after this statement, the trial justice declared a mistrial on the ground that her preconception of witness Bubar's credibility could have an impact on her ability to decide the case fairly. Defense counsel's objection was noted on the record.

On April 29, 1982, defendant moved to dismiss the indictment on the ground that a retrial would violate his right to be free from double jeopardy. The motion was heard by a different justice of the Superior Court, who granted the motion and dismissed the indictment on July 14, 1982. After noting that the presiding justice at the first trial "expressed some concern based upon prior knowledge as to proposed witnesses for both the State and the Defense," he said:

> Notwithstanding that disclosure by the presiding Judge, Defendant chose to proceed with the trial while the State chose not to proceed with the trial and argued for a mistrial that was subsequently granted. To allow a second trial would be violative of Article I, Section 8 of the Maine Constitution and the fifth amendment of the United States Constitution.

With the written approval of the Attorney General, the state appealed pursuant to 15 M.R.S.A. § 2115–A.

## I. *Jurisdiction to hear appeal.*

The defendant contends that the state was not authorized to appeal the instant case pursuant to 15 M.R.S.A. § 2115–A (1980 & Supp.1982–1983). The only provisions of that section that could authorize a state's appeal in this case are contained in subsection 1, which reads, in pertinent part, as follows:

> An appeal may be taken by the State in criminal cases on questions of law ... from the Superior Court to the law court: ... from a pre-trial dismissal of an indictment ... or from any other order of the court prior to trial which ... has a reasonable likelihood of causing ... termination of the prosecution.

Subsection 4 of section 2115–A provides, among other things, that an appeal taken pursuant to subsection 1 shall be taken within twenty days after the entry of the order and shall also be taken before the defendant has been placed in jeopardy.[1]

---

1. 15 M.R.S.A. § 2115–A(4) provides:

> An appeal taken pursuant to subsections 1 or 2 shall be taken within 20 days after the

Because jeopardy had attached when his initial trial began before the justice of the Superior Court, defendant argues that the state could not appeal the judgment dismissing his indictment.

■ Although defendant correctly claims that jeopardy had attached in his initial trial,[2] he is wrong in inferring that a state's appeal pursuant to subsection 1 is therefore barred by subsection 4 in the circumstances presented here. The purpose underlying the jeopardy provision of subsection 4 is to require the state to appeal a pretrial order before jeopardy attaches even though twenty days have not elapsed after the entry of the order appealed from. In other words, subsection 4 prevents the state from interrupting a trial by appealing a pretrial order after jeopardy has attached even though twenty days have not passed since entry of the order. The jeopardy referred to in subsection 4 is that which would arise upon a subsequent trial or retrial rather than the jeopardy that might have attached at an earlier trial. On the facts of this case, subsection 4 does not preclude the state from appealing pursuant to subsection 1.

The provision of subsection 1 itself, that a state's appeal may be taken from a "pre-trial dismissal of an indictment," authorizes the appeal in the present case. The dismissal of the indictment was a "pre-trial dismissal" in the sense that it occurred before any retrial had begun. The fact that an earlier trial had once been commenced is irrelevant in determining whether the state had authority to take the present appeal under section 2115–A from the dismissal order of the second justice.

II. *Manifest necessity to declare a mistrial.*

Jeopardy attached at defendant's first trial. The issue on this appeal is whether the double jeopardy clauses of the state and federal constitutions bar a retrial when the trial justice has declared a mistrial, *sua sponte* and over defendant's objection, because she thought, as a result of information she acquired during the trial, that she could not judge impartially the credibility of a prospective material witness.[3]

■ Both the Maine Constitution and the United States Constitution protect persons from being "twice put in jeopardy of life or limb" for the same offense. The double jeopardy clause preserves a defendant's "valued right to have his trial completed by a particular tribunal" and protects him from the considerable burdens imposed by successive prosecutions for the same offense. *Arizona v. Washington,* 434 U.S. 497, 503–04, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978). However, the double jeopardy clause does not bar retrial of a defendant when a mistrial has been declared, even over his objection, if there is "manifest necessity" for declaring the mistrial. *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717; *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). Where "manifest necessity" exists to declare a mistrial, the public's interest in just judgments must take precedence over the defendant's interest in having his trial completed by a particular tribunal. *Arizona v. Washington,* 434 U.S. at 505, 98 S.Ct. at 830. The following statement by Justice Storey is often quoted as the classic statement of that principle:

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest

entry of the order, and an appeal taken pursuant to subsection 1 shall also be taken before the defendant has been placed in jeopardy. An appeal taken pursuant to this subsection shall be diligently prosecuted.

2. *See State v. Linscott,* 416 A.2d 255, 258 (Me. 1980).

3. The double jeopardy provision of the Maine Constitution, Me. Const. art. I, § 8, affords essentially the same protection as that guaranteed by the fifth amendment of the United States Constitution. *State v. Howes,* 432 A.2d 419, 423 (Me.1981).

necessity for the act, or the ends of public justice would otherwise be defeated.

*United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). Application of the *Perez* principle requires us to determine whether, in light of all the circumstances, the trial court exercised sound discretion in declaring a mistrial. *State v. Linscott,* 416 A.2d 255, 260 (Me.1980).

■ It has been often considered a sufficient reason for declaring a mistrial that something has occurred during the trial revealing that one or more jurors are not impartial. *Thompson v. United States,* 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894); *Simmons v. United States,* 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891); *United States ex rel. Stewart v. Hewitt,* 517 F.2d 993 (3rd Cir.1975); *Whitfield v. Warden of Maryland House of Correction,* 486 F.2d 1118 (4th Cir.1973), *cert. denied,* 419 U.S. 876, 95 S.Ct. 139, 42 L.Ed.2d 116 (1974); *Woods v. State,* 367 So.2d 982 (Ala.1978); Schulhofer, *Jeopardy and Mistrials,* 125 U.Pa.L.Rev. 449, 475–77 (1977). Moreover, the overriding public interest in fair decisions requires that an appellate court give considerable deference to a trial judge's determination to declare a mistrial when it develops on trial that one or more jurors may not be impartial. *Arizona v. Washington,* 434 U.S. at 511, 98 S.Ct. at 833.

■ Similar principles apply when something occurs to impair the impartiality of a judge in a non-jury trial and the judge acknowledges that his objectivity is compromised. *Cornish v. State,* 272 Md. 312, 322 A.2d 880 (1974); *Commonwealth v. Africa,* 281 Pa.Super. 419, 422 A.2d 539 (1980). Here, on appeal from the motion justice's decision to dismiss the indictment, this Court reviews, on the record made before the motion justice, the determination of the justice who declared the mistrial, according appropriate deference to her ruling.[4]

■ In the circumstances, the trial justice did not abuse her discretion. After receiving the witness list early in the trial, she recognized that she knew two of the witnesses and had already formed an opinion on the credibility of one of them. She did not precipitately declare a mistrial but expressed to both counsel her concern that she could not judge impartially the credibility of witness Bubar.[5] She discussed with counsel the possible double jeopardy consequences if she were to declare a mistrial.[6] When defense counsel said he thought the entire state's case rested on the testimony of witness Bubar, the trial justice was alerted to the probability that her preconceived opinion of Bubar's credibility related to a crucial element of the case.

■ The court's primary duty was to determine fairly and impartially whether defendant was guilty of the crime charged. The defendant may have wanted to continue the trial because he surmised that the trial justice had a low opinion of the veracity of an important witness for the state. However, he had no right to have his case decided by a factfinder biased in his favor on a critical issue. Justice requires that both sides, not just defendant, receive a fair trial. *Arizona v. Washington,* 434 U.S. at 516, 98 S.Ct. at 835. It cannot be deemed an abuse of discretion for the trial justice to decide in those circumstances that there was manifest necessity for declaring a mistrial.

---

**4.** The role of the second justice, in deciding the defendant's motion to dismiss, was not, precisely speaking, to determine *de novo* whether the circumstances of the first trial required a declaration of mistrial as a matter of manifest necessity. Rather, it was to determine whether the first justice abused her discretion in deciding to order a mistrial.

**5.** *Cf. United States v. Jorn,* 400 U.S. 470, 486–87, 91 S.Ct. 547, 557–58, 27 L.Ed.2d 543 (1971)

(abuse of discretion found where, among other things, judge abruptly terminated trial without hearing views of counsel).

**6.** *Cf. United States v. Starling,* 571 F.2d 934 (5th Cir.1978) (abuse of discretion found where, among other things, the trial court showed a lack of awareness of the double jeopardy consequences of declaring a mistrial or of the manifest-necessity standard).

Defendant contends that the prosecutor erred by not providing the trial justice with a witness list prior to trial and that the trial justice also erred by not making sure she received a list prior to trial. He argues that the double jeopardy clause bars retrial after a mistrial results from such an error. Even on the assumption, *arguendo,* that the tardy rendition and perusal of a witness list constituted errors, the double jeopardy clause does not automatically bar retrial. *See Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425; Schulhofer, *supra,* at 469. The double jeopardy clause may bar retrial if the mistrial is based on an error that lends itself to manipulation, thereby operating "as a post-jeopardy continuance to allow the prosecution an opportunity to strengthen its case." *Illinois v. Somerville,* 410 U.S. at 469, 93 S.Ct. at 1073. *See also United States v. Kin Ping Cheung,* 485 F.2d 689, 691–92 (5th Cir.1973); *McNeal v. Hollowell,* 481 F.2d 1145, 1150 (5th Cir.1973), *cert. denied,* 415 U.S. 951, 94 S.Ct. 1476, 39 L.Ed.2d 567 (1974). Nothing in the facts of the present case suggests any misconduct by the prosecutor; he did not give the trial justice the witness list with any purpose of provoking a mistrial. Furthermore, the irregularity involved in late submission of a witness list is not one that can be exploited generally by prosecutors to obtain mistrials. A prosecutor could hardly know in advance that the trial justice had a preconceived opinion of the credibility of one or more of the witnesses on the list.

Defendant argues, finally, that the trial justice failed to explore reasonable alternatives to ordering a mistrial. Specifically, defendant says the trial justice failed to inquire whether Bubar's testimony was important to the state's case or whether other witnesses could offer the same testimony. He claims the justice could not properly exercise her discretion lacking that knowledge. The argument ignores the fact that defense counsel himself advised the court that the entire state's case rested on Bubar's testimony. It was not an abuse of discretion for the trial justice to decide, in view of that statement, that no special, alternative procedures could be adopted that would enable her to continue hearing the case as a fair and impartial judge.

The entry is:

Judgment vacated.

Indictment reinstated. Remanded for further proceedings consistent with this opinion.

All concurring.