PEOPLE v HICKS

Docket No. 149026. Submitted May 5, 1993, at Detroit. Decided
August 16, 1993, at 9:25 A.M. Leave to appeal sought.

Tyrone Hicks was charged in the Detroit Recorder's Court with
assault with intent to murder and possession of a firearm
during the commission of a felony. A bench trial of the defen-
dant had commenced before Daphne Means Curtis, J., and
three prosecution witnesses had presented testimony before
Judge Curtis was informed by the prosecutor that the defen-
dant is the brother of Judge Curtis' friend and campaign
manager. On her own motion, Judge Curtis recused herself,
giving as reason the avoidance of an appearance of impropriety.
The case was then assigned by the acting chief judge to Ter-
rance K. Boyle, J., who declared a mistrial and denied the
defendant's motion to dismiss on grounds of double jeopardy
the charges against him. The defendant appealed by leave
granted.

The Court of Appeals *held:*

Jeopardy attaches in a bench trial once the first witness is
sworn. If the trial court declares a mistrial after jeopardy has
attached, the state is precluded from bringing the defendant to
trial a second time unless the defendant consented to the
mistrial or the mistrial was of manifest necessity. In this case,
a mistrial was declared over the objection of the defendant, and
Judge Curtis' concern over a potential perception of bias and
appearance of impropriety was insufficient to establish manifest
necessity for a mistrial. Accordingly, Judge Boyle erred in
denying the motion for dismissal on the asserted ground of
double jeopardy.

Denial of defendant's motion to dismiss reversed.

J.T. HAMMOND, J., dissenting, stated that manifest necessity

REFERENCES

Am Jur 2d, Criminal Law §§ 258-264.
Former jeopardy as bar to retrial of criminal defendant after
original trial court's sua sponte declaration of mistrial. 40
ALR4th 741.
What constitutes manifest necessity for prosecutor's dismissal of
action, allowing subsequent trial despite jeopardy's having at-
tached. 14 ALR4th 1014.

for a mistrial was established once Judge Curtis refused further participation and that a second trial is not barred by double jeopardy.

CRIMINAL LAW — MISTRIAL — DOUBLE JEOPARDY.

If a mistrial is declared after jeopardy has attached, the state is precluded from bringing the defendant to trial a second time unless the defendant consented to the mistrial or the mistrial was of manifest necessity; a mistrial is not of manifest necessity and a retrial would be barred by double jeopardy where the mistrial is granted, over the defendant's objection, after a trial judge's own recusal based on a potential perception of bias or appearance of impropriety, as opposed to actual bias or partiality, resulting from the judge's friendship with a sibling of the defendant.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Karen M. Woodside,* Assistant Prosecuting Attorney, for the people.

*Henry M. Scharg,* for the defendant.

Before: FITZGERALD, P.J., and MICHAEL J. KELLY and J.T. HAMMOND,* JJ.

FITZGERALD, P.J. Defendant appeals by leave granted from the trial court's denial of his motion to dismiss the charges against him on double jeopardy grounds. We reverse.

Defendant was charged with assault with intent to murder, MCL 750.83; MSA 28.278, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). A bench trial was commenced before Detroit Recorder's Court Judge Daphne Means Curtis on September 9, 1991. During the morning session, three prosecution witnesses testified and the matter recessed

* Circuit judge, sitting on the Court of Appeals by assignment.

for lunch. Upon reconvening, Judge Curtis announced in open court that the trial prosecutor had just informed her that defendant was the brother of Gregory Hicks, the judge's personal friend and campaign manager.

Judge Curtis then asked the parties for their respective positions on the matter. Counsel for defendant argued that because Gregory Hicks would not be called as a witness in the case, Judge Curtis should not recuse herself. Counsel further argued that should Judge Curtis recuse herself, the case should be dismissed. The assistant prosecutor stated that he had no comment on the matter. Judge Curtis then stated that although her relationship with defendant's brother could potentially affect her objectivity in the case, she believed that such influence was unlikely. Judge Curtis noted, however, that her friendship with defendant's brother created the appearance of impropriety. She then recused herself and referred the decisions regarding a mistrial and defendant's request for dismissal to the chief judge of the court.

Acting Chief Judge Robert L. Evans reassigned the case to Judge Terrance K. Boyle, who entertained a defense motion to dismiss at a hearing held on December 4, 1991. At the hearing, Judge Boyle formally declared a mistrial, stating that Judge Curtis' recusal constituted the functional equivalent of a mistrial. Judge Boyle then denied defendant's motion to dismiss, reasoning that Judge Curtis' recusal constituted manifest necessity for a declaration of a mistrial, and thus, defendant's retrial was not barred by double jeopardy.

Defendant now argues on appeal that Judge Boyle erred in denying his motion to dismiss because there was no manifest necessity for a mis-

trial. We agree. A judge should not declare a mistrial sua sponte without first making explicit findings, after a hearing on the record, that no reasonable alternative exists. *United States v Jorn,* 400 US 470, 483-485; 91 S Ct 547; 27 L Ed 2d 543 (1971); *People v Benton,* 402 Mich 47, 61; 260 NW2d 77 (1977). *People v Wilcox,* 183 Mich App 616, 619-620; 456 NW2d 421 (1990).

The United States and Michigan Constitutions prohibit a defendant from being placed twice in jeopardy. *People v Dawson,* 431 Mich 234, 250; 427 NW2d 886 (1988); *Wilcox, supra* at 620. Jeopardy attaches in a bench trial once the first witness is sworn. *People v Brower,* 164 Mich App 242, 246; 416 NW2d 397 (1987). If the trial court declares a mistrial after jeopardy has attached, the state is precluded from bringing the defendant to trial a second time unless the defendant consented to the mistrial or the mistrial was of manifest necessity. *Dawson, supra* at 252; *Wilcox, supra* at 620; *People v Little,* 180 Mich App 19, 22; 446 NW2d 566 (1989). The trial court is afforded considerable deference with respect to its decision regarding the existence of manifest necessity. *Benton, supra* at 65. Cf. *Little, supra* at 23 (citing *Downum v United States,* 372 US 734, 738; 83 S Ct 1033; 10 L Ed 2d 100 [1963], for the proposition that any doubt regarding the existence of manifest necessity should be resolved in favor of the defendant).

"Manifest necessity" is not a precisely defined concept, but is usually determined case by case with reference to various factors, such as the failure of the jury to agree upon a verdict, misconduct on the part of a juror, or an incurable defect in an indictment or the proceedings. *Benton, supra* at 56-57; *Wilcox, supra* at 621. "An important consideration is whether the nature of the defect perceived by the judge was such that, if a guilty

verdict had been rendered, the conviction would have had to have been reversed on appeal." *Wilcox, supra* at 621.

Courts have generally recognized that where circumstances actually impair a trial judge's ability to impartially preside over a trial, there is manifest necessity for the court to declare a mistrial. See, e.g., *State v Pierce,* 459 A2d 148 (Me, 1983), *State v Workman,* 60 Ohio App 2d 204; 396 NE2d 777 (1977), *Lewis v Anderson,* 94 Idaho 254; 486 P2d 265 (1971), and *State v Puckett,* 92 Ariz 407; 377 P2d 779 (1962). In the absence of any actual bias or partiality, however, the mere appearance of partiality is generally held insufficient to establish manifest necessity. See, e.g., *Little, supra, Torres v State,* 614 SW2d 436 (Tex Crim App, 1981), *Douglas v State,* 32 Md App 311; 360 A2d 474 (1976), and *Ferlito v Judges of County Court,* 39 AD2d 17; 331 NYS2d 229 (1972), aff'd 31 NY2d 416; 340 NYS2d 635; 292 NE2d 779 (1972).

In the instant case, when apprised of the familial relationship between defendant and her campaign manager, Judge Curtis conferred with counsel for the respective parties in open court. Counsel for defendant unequivocally opposed Judge Curtis' suggestion that she should recuse herself. Nevertheless, in deciding to recuse herself, Judge Curtis stated, in pertinent part:

> The problem with sitting as a judge, particularly in a waiver trial is that not only do I have to be concerned about whether I might be influenced in my rulings or in my findings by knowing someone in the defendant's family but also whether or not it looks improper, the appearance of impropriety and the Cannons [sic] refer to both of those situations as it applies to judges. I might be influenced by knowing his brother now that I know that I know his brother. I don't really think that I would

be, but I think just as important is the fact that it would not look good, that the appearance of impropriety could certainly result from my continuing as the trier of fact in this case.

After the case was reassigned to Judge Boyle, he found that Judge Curtis' recusal alone constituted manifest necessity warranting a mistrial. We disagree. Under the circumstances, it was not necessary for Judge Curtis to recuse herself from this case. Although the assistant prosecutor brought the potential conflict to the judge's attention, he did not ask the judge to recuse herself, nor did he move for a mistrial. Furthermore, counsel for defendant adamantly opposed the judge's recusal. Because Judge Curtis stated that it was unlikely that her objectivity would be affected, it appears that her decision to recuse herself was essentially based on the potential for bias and the appearance of impropriety. We find under these facts that such grounds did not constitute "manifest necessity" requiring a mistrial.[1] As this Court in *Little, supra,* stated:

> While we recognize the desirability of avoiding the appearance of judicial partiality whenever possible, this potential for the appearance of judicial partiality must be balanced against the deprivation of defendant's "valued right to have his trial completed by a particular tribunal." This valued right is more compelling where the defendant, as here, actively opposed the declaration of a mistrial. [*Id.* at 27, quoting *Jorn, supra* at 484.]

---

[1] In *People v McCline,* 442 Mich 127; 499 NW2d 341 (1993), a factually distinguishable case, the Court noted that it is preferable that a single judge preside over all aspects of a trial to insure that the judge who hears the testimony regarding the facts also applies the law. In *McCline,* the Court held that substitution of a judge before opening argument or the admission of evidence is not an automatic ground for reversal, and that the defendant in that case failed to demonstrate prejudice.

In his decision, Judge Boyle stated that although he "would not have recused myself under these circumstances mid-trial absent a request by either party," he felt that Judge Curtis' decision could not be called error and was, "in constitutional terms," manifest necessity. Judge Boyle appears to have distinguished this case from *Little* because a bench trial was involved and defendant would be minimally prejudiced by a retrial. We believe this is too tenuous a consideration. Even in bench trials, courts have declined to find manifest necessity for disqualification where the trial judge's personal relationships, or those of the judge's family, present a hypothetical possibility or an appearance of influence as opposed to actual bias or partiality. In *Ferlito, supra,* a very similar relationship between the affected parties existed and the court found no manifest necessity. The court stated:

> In the appraisal of judicial conduct it is recognized, of course, that the appearance of impropriety may sometimes be as devastating as the reality; but the mistrial procedure is not designed to afford an escape hatch from the performance of an unpleasant duty. A mistrial such as this, declared as in the public interest, and against the defendant's will, must have some basis of demonstrable substance— for, as the rule has it, the necessity must be 'manifest.' Here, the remote possibility of unfair treatment and the clear showing of prejudice to the defendant conjoined to interject the mistrial which the court proposed and, over objection, granted. [31 NY2d 419-420.]

We fully agree with the New York court and can find no substantial or meaningful difference between *Ferlito* and this case. There was no manifest necessity to declare a mistrial over defendant's objection, and the state is barred from

placing defendant in jeopardy a second time on these charges. We do not disagree with Judge Boyle's conclusion that Judge Curtis' recusal was the functional equivalent of a mistrial, but we disagree with his conclusion that it cannot be called error. We find constitutional error requiring reversal.

The February 7, 1992, order of the Recorder's Court denying defendant's motion to dismiss on double jeopardy grounds is reversed and the case is dismissed.

MICHAEL J. KELLY, J., concurred.

J. T. HAMMOND, J. *(dissenting)*. I respectfully dissent.

The facts are accurately stated in the lead opinion. The lead opinion states, "A judge should not declare a mistrial sua sponte without first making explicit findings, after a hearing on the record, that no reasonable alternative exists." *Ante* at 200. I agree.

The lead opinion also states: "Under the circumstances it was not necessary for Judge Curtis to recuse herself from this case. Although the assistant prosecutor brought the potential conflict to the judge's attention, he did not ask the judge to recuse herself, nor did he move for a mistrial. Furthermore, counsel for defendant adamantly opposed the judge's recusal. Because Judge Curtis stated that it was unlikely that her objectivity would be affected, it appears that her decision to recuse herself was essentially based on the potential for bias and the appearance of impropriety. We find under these facts that such grounds did not constitute 'manifest necessity' requiring a mistrial." *Ante* at 202. Again, I agree.

I believe that the correct analysis of this case

requires that we look at precisely what did happen. Judge Curtis did not grant a mistrial. She did not dismiss the case.

If Judge Curtis had dropped dead during the course of the trial, there would be no question but that some successor judge would be forced to declare a mistrial. Under those circumstances, Judge Curtis would not be able to proceed further (being then before a much higher court), and there would thus be manifest necessity requiring a mistrial. See *Christopher v Nelson,* 50 Mich App 710; 213 NW2d 867 (1973).

In this case, Judge Curtis fortunately did not die, but simply refused to participate further in the proceedings. Her reason was that continuing to preside over the case after the prosecutor had revealed her connection with defendant's brother might have resulted in the appearance of impropriety if she acquitted the defendant or convicted him and imposed a lenient sentence. I suggest that Judge Curtis' reason was not insignificant or frivolous.

The point, however, is not why she refused to participate. Her personal motivation, for purposes of this proceeding, does not matter. She simply refused to proceed further. In light of that refusal to proceed further, Judge Boyle had absolutely no choice but to declare a mistrial. He tried in every way possible to avoid it, but the defendant, as was his right, declined the several alternatives presented, leaving Judge Boyle with no choice but to do that· which the chief judge (or acting chief judge, in the absence of the chief judge), ought to have done: declare the mistrial. Again, the manifest necessity for the mistrial was the fact that the trial judge, in the middle of a bench trial of a felony case, simply refused to participate further.

It was this, and not the appearance of impro-

priety, that constitutes the manifest necessity with
which Judge Boyle was faced.

We had here, I suggest, a "breakdown in judicial
machinery." Justice Douglas, in his dissent in *Gori
v United States,* 367 US 364, 372; 81 S Ct 1523; 6
L Ed 2d 901 (1961), said:

> Once a trial starts jeopardy attaches. The prose-
> cution must stand or fall on its performance at the
> trial. I do not see how a mistrial directed because
> the prosecutor has no witness is different from a
> mistrial directed because the prosecutor abuses his
> office and is guilty of misconduct. In neither is
> there a *breakdown in judicial machinery such as
> happens when the judge is stricken, or a juror has
> been discovered to be disqualified* to sit, or when it
> is impossible or impractical to hold a trial at the
> time and place set. [Emphasis added.]

In this case, Judge Curtis was the judge of the
facts as well as the law and might therefore be
analogized to a juror. If a juror in a criminal
prosecution becomes ill during the trial, the jury
may be discharged and the accused may be tried
again for the same offense without contravening
the double jeopardy provision of the Fifth Amend-
ment. *United States v Potash,* 118 F2d 54 (CA 2,
1941).

Similarly, if, during a federal criminal trial, the
trial judge discovers facts that indicate that one or
more of the jurors is "disqualified or biased against
the government" or the defendant, the judge may
discharge the jury and direct a retrial and in such
event the subsequent trial does not violate the
double jeopardy provision of the Fifth Amend-
ment. *Wade v Hunter,* 336 US 684; 69 S Ct 834; 93
L Ed 974 (1949); *Thompson v United States,* 155
US 271; 15 S Ct 73; 39 L Ed 146 (1894); *Simmons v
United States,* 142 US 148; 12 S Ct 171; 35 L Ed
968 (1891).

In *United States v McCunn,* 36 F2d 52 (SD NY, 1929), after the jury was sworn, it was discovered that one of the defendants was a "brother of the husband of the juror's aunt," and it was held that the discharge of the jury was within the discretion of the trial court and that the defendants could be retried without subjecting them to double jeopardy.

The propriety of the reasons for a judge's own recusal in the middle of a trial may well be a proper subject of inquiry for the Michigan Judicial Tenure Commission, but those considerations are not determinative or dispositive in this case.

In *United States v Perez,* 22 US (9 Wheat) 579, 580; 6 L Ed 165 (1824), the *manifest necessity* rule was stated, holding that the discharge of the jury did not always bar a future trial for the same offense:

> We think that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is *manifest necessity* for the act, *or the ends of public justice would otherwise be defeated.* . . . [S]uch a discharge constitutes no bar to further proceedings and gives no right of exemption to the prisoner from being again put upon trial. [Emphasis added.]

Judges often have to make rulings that, at first glance, appear to many in the general public to be irrational, unreasonable, unfair, or even stupid. There is simply no way that all of us can make all of our decisions palatable to everyone. We can, however, explain the reasons for our actions. For the sake of engendering support for the rule of law, we have an obligation to do so. This is not merely an obligation to satisfy the appellate

courts, but also an obligation to explain our ac-
tions so that the public can, and will, understand
why we have been forced to do that which they
would rather we not do.

For just a moment, then, let us look at this case
through the jaundiced eyes of a general public
that may not trust public officials, nor care partic-
ularly for some of the technical details that are so
central to our judicial system. Let us look at a
worst case example, from a public relations stand-
point.

This case runs the danger of looking to the
public as follows: The judge has a close relation-
ship with a brother of the defendant. She says
nothing about that, perhaps hoping that no one
will find out. The prosecutor reminds her of this
relationship, therefore telling her that the cat is
out of the bag. It now is apparent that there will
be problems because of the known relationship
between the judge and the defendant's family. The
prosecution does not move for a mistrial, to dis-
qualify the judge, or for anything else. The judge
refuses to participate further and, if the double
jeopardy claim is upheld the defendant gets off
absolutely free from a life offense (and from a
charge of possession of a firearm during the com-
mission of a felony) because the trial judge, by
some legal mumbo jumbo, made it forever impossi-
ble for the prosecution to continue the case against
the defendant to judgment and sentence. If that
doesn't evoke the "appearance of impropriety," I
do not know what does.

While I do not suggest or believe that any of this
is, or even might be, true, or that Judge Curtis
was involved in any such conspiracy or impro-
priety of any sort (beyond recusing herself at a
time when she should not have done so), there are
likely to be those who might think that she did

conspire to obstruct justice in this case. Only Judge Curtis is in a position to deny it. There may be those who, on the basis of these facts, will not believe her. Had she recused herself before the first witness was sworn and began to testify, there would have been no problem. What really matters in this case is that the whole situation casts a grave shadow on the perception of the integrity of the judiciary in this state.

Judge Boyle, as the fourth Recorder's Court judge to have this case before him, declared a mistrial because of manifest necessity, and in doing so committed no error. This matter can and should proceed to trial.