The State of Ohio, Appellee, *v.*
Workman, Appellant. ■

[Cite as State v. Workman (1977), 60 Ohio App. 2d 204.]

(No. 5-77-16—Decided November 10, 1977.)

*Mr. J. Stanley Needles,* prosecuting attorney, and *Mr. Joseph H. Niemeyer,* appellee.

*Mr. William D. Dauterman,* for appellant.

Cole, J. This is an appeal from a judgment of conviction and sentence on a plea of no contest for a violation of R. C. 2913.51, receiving stolen property. The issues here raised are limited to procedural problems and the entire factual situation is not involved. Basically it appears that the appellant was indicted by the grand jury on January 11, 1977, for the offenses of both burglary and receiving stolen property. It

appears that the appellant was originally incarcerated on January 5, 1977, or at least counsel are in substantial agreement on this date. The record indicates arrest on the warrant on January 12, 1977, but does not specifically indicate the original date of arrest. Thereafter the case progressed in appropriate fashion and was set for trial on March 31, 1977. The trial continued the following day when one Stephen Walker, an attorney representing a William Lee Miller, appeared before the court in response to a subpoena *ducus tecum* issued at the request of the appellant. Walker moved to quash the subpoena on the ground the information or documents requested were privileged information. After argument the court tentatively granted the motion but agreed to hear further argument and evidence on reconsideration. Thereafter the following occurred before any witnesses testified:

"Mr. Heck: Your Honor, Mr. Miller is not on trial. I think Mr. Walker is interposing entirely too much into this trial and because of a conversation with my client has raised with me and because he has raised it with me, I must, I'm obligated to raise it with the Court. I respectfully do so both to Steve Walker and the Court, I would ask to have judicial notice of the fact that the Court is the father of Steven Walker, and Steven Walker is the son of the Court and move for a mistrial. I'm not suggesting there has been anything improper.

"* * *

"The Court: I consider that not only one of the more outrageous remarks that I have heard in the last several days, but in the last several months. Mr. Walker is not here as my son, he's here as an officer of this Court and I resent deeply and vitally any suggestion that this Court has given him any better treatment or any worse treatment than you or any other officer of the Court and I resent it, we'll stand in recess.

"(Whereupon, a recess was taken at 10:57 a.m. and the Court came to session at 11:14 a.m.)

"The Court: The Court has not taken favorably the motion made by Mr. Heck that a mistrial be ordered in this particular case and the Court will overrule that motion. In the first place, the presence of Mr. Walker, in this Court is as

Counsel for a Defendant who's going to be tried by another Judge assigned by the Supreme Court of Ohio to hear and resolve the matter. Yesterday a pre-trial was held, the matter was assigned on the 12th.

"Very well, the motion therefore will be overruled. *However, the Court no longer feels that it can honestly and effectively judge as unbiased and unprejudiced* and accordingly a mistrial will be declared by the Court.

"To suggest such impropriety and I'm well aware that the impropriety came from the Defendant, the suggestion that impropriety came from the Defendant is repugnant to this Court and it violates every standard that this Court has established for itself. For this Court, therefore, in view of the Defendant's trust, I'll advise the remarks, *I do not feel myself competent to effectively give, effective justice in this case.* I have prided myself over the last five years, that a man comes before me, pure, and innocent, and we let the process of the law proceed, the law is too important to me, to consider myself any further than its honest servant and for there to be an accusation that this Court is less than its honest servant, I'll not abide.

"However much anyone likes or dislikes me, personally, is of no consequence to me, but when the propriety of this Court, the person who occupies this bench is impugned. I will not be a party to it." (Emphasis added.)

Thereafter the case was reassigned and trial was some time, not apparent in the record, set for June 16, 1977. On May 5, 1977, the defendant moved for discharge on the basis that he was not given a speedy trial under the statute. This was overruled by journal entry dated May 6, 1977. On June 16, 1977, a further motion to discharge on the same grounds, and another on the grounds of former jeopardy were filed, both of which were overruled by entry filed July 12, 1977. Thereafter, after plea bargaining, the appellant pleaded no contest to the count of receiving stolen property and the other count was dismissed at the request of the prosecutor.

The defendant now appeals asserting two assignments of error which will be separately considered, together with any additional facts necessary to their disposition.

I.  The trial court erred in overruling defendant's motion

to discharge for the reason that defendant was in former jeopardy.

In *United States* v. *Dinitz* (1976), 424 U. S. 600, the Supreme Court of the United States dealt with the double jeopardy clause of the Fifth Amendment in a situation involving the declaration by the trial court of a mistrial at a first trial followed by a second trial and a conviction. The court states in the opinion, at page 606:

"Since, Mr. Justice Story's 1824 opinion for the Court in *United States* v. *Perez,* 9 Wheat. 579, 580, this Court has held that the question whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on whether 'there is a manifest necessity for the (mistrial), or the ends of public justice would otherwise be defeated.' *Illinois* v. *Somerville,* 410 U. S. 458, 461; *United States* v. *Jorn, supra,* at 481; *Gori* v. *United States,* 367 U. S. 364; *Wade* v. *Hunter, supra,* at 689-690; *Simmons* v. *United States,* 142 U. S. 148, 153-154. Different considerations obtain, however, when the mistrial has been declared at the defendant's request.***"

It continued, at page 608:

"The distinction between mistrials declared by the court *sua sponte* and mistrials granted at the defendant's request or with his consent is wholly consistent with the protections of the Double Jeopardy Clause. Even when judicial or prosecutorial error prejudices a defendant's prospects of securing an acquittal, he may nonetheless desire 'to go to the first jury and, perhaps, end the dispute then and there with an acquittal.' *United States* v. *Jorn, supra,* at 484. Our prior decisions recognize the defendant's right to pursue this course in the absence of circumstances of manifest necessity requiring a *sua sponte* judicial declaration of mistrial."

The Ohio Constitution also provides that no person shall be put in jeopardy twice for the same offense. Section 10, Article I. The same issue therefore arises with a similar interpretation as to the mistrial effect.

The first and second paragraphs of the syllabus in *Hines* v. *State* (1873), 24 Ohio St. 134, read as follows:

"1. In a criminal cause, the discharge of the jury without the consent of the defendant, after it has been duly impaneled

and sworn, but before verdict, is equivalent to a verdict of acquittal, unless the discharge was ordered in consequence of such necessity as the law regards as imperative.

"2. In such case, the record must show the existence of the necessity which required the discharge of the jury; otherwise, the defendant will be exonerated from the liability of further answering to the indictment."

See also *State* v. *Palmieri* (1938), 13 Ohio Op. 517.

Ohio has also provided by statute for the discharge of a jury without prejudice which sets forth various specific grounds but which do not appear to be exclusive but permissive only.

It would therefore appear that the former jeopardy might here attach unless the record reveals:

a. The mistrial was requested or consented to by the appellant.

b. There existed an absolute necessity for such action.

Reviewing the factual situation it is apparent that the mistrial was in fact specifically requested by the appellant. Although the court overruled the motion and immediately declared a mistrial *sua sponte* the effect of the action of the trial court was to grant exactly what the appellant had requested. No objection was made by appellant nor was his motion withdrawn. Under these facts it is our opinion that the equivalent of consent exists.

We further note that the court on consideration concludes that because of his reaction to the episode he does "***not feel myself competent to effectively give, effective justice in this case.***" This is basically a factual conclusion. The rulings of the trial court on matters of law in a criminal case in a jury trial are vital to its proper conduct and to the just result achieved. If he by virtue of personal feelings honestly and sincerely believes that he cannot competently and effectively so act in an unbiased manner then the resulting trial would be a mockery of justice. We conclude that to achieve the ends of justice it was imperative that another judge conduct the trial, and to provide for this the declaration of a mistrial was appropriate.

It may be further noted that this action of the trial court was in no way an aid to the prosecution or at the request or urging of the state. It was action to remove possible prejudice

or bias of the trial court which might adversely affect the appellant. In *Gori* v. *United States* (1961), 367 U. S. 364, the action of a trial court in *sua sponte* declaration of a mistrial without the defendant's active and express consent or his objection was involved. In the opinion Justice Frankfurter stated, at 368:

"Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment."

At page 369, Justice Frankfurter continued:

"Suffice that we are unwilling, where it clearly appears that a mistrial has been granted in the sole interest of the defendant, to hold that its necessary consequence is to bar all retrial. It would hark back to the formalistic artificialities of seventeenth century criminal procedure so to confine our federal trial courts by compelling them to navigate a narrow compass between Scylla and Charybdis. We would not thus make them unduly hesitant conscientiously to exercise their most sensitive judgment—according to their own lights in the immediate exigencies of trial—for the more effective protection of the criminal accused."

Objection is made that the reason for mistrial was not entered in the journal as required by R. C. 2945.36. This appears to be true. However, the court fully set forth its reasons and grounds for the mistrial in the record, both appellant and his counsel being present. We find no prejudice established as a result of the omission.

For both reasons we conclude that former jeopardy did not bar a second trial of the appellant. The assignment of error is not well taken.

II. The court erred in overruling defendant's motion to discharge for want of a timely trial as required by law.

Appellant asserts that under R. C. 2945.71 *et. seq.* the defendant was entitled to trial within 90 days but that he was not tried within that period.

The record indicates trial was indeed scheduled within 90 days of the date of the arrest. From January 5, 1977, to

March 31, 1977, is 85 days so trial was originally commenced within the prescribed statutory period. That trial was concluded by declaration of a mistrial on April 1, 1977, which was a Friday. The earliest time trial could have been rescheduled would have been Monday, April 4, 1977, which would have been wholly impossible under the circumstances which required obtaining a new trial judge and a recommencement of the trial with new subpoenas for witnesses and calling of a jury panel.

R. C. 2945.71 *et seq.* can not logically be applied to the situation where a second trial is involved. In many cases in which trial is held close to or at the end of the prescribed period, to hold a second trial *also* within that period would be, as here, fully impossible. The trial judge would therefore be in effect prohibited from granting a mistrial for any reason without consent of the defendant, for if he did so he would be required under these sections to then discharge the defendant. Such an absurd result was not intended by the legislature. Where a trial has been commenced in the appropriate period, we conclude, these sections are complied with and if for any reason a second trial becomes necessary, the time limits therein set forth are no longer applicable, and for such a situation the legislature has made no specific provision. We therefore find that the constitutional guarantee of a speedy trial is the applicable standard, not the specific statutory framework of R. C. 2945.71 *et seq. See State* v. *Gettys* (1976), 49 Ohio App. 2d 241.

In *State* v. *Bound* (1975), 43 Ohio App. 2d 44, the court at page 50, set forth four factors to be considered in determining whether there has been a denial of the constitutional right to a speedy trial.

1. The length of the delay. Here the first trial was held within the 90 days required by statute. The period that then elapsed before the second trial was 76 days. Even under the Ohio statutory provision, if the defendant is not incarcerated, the state has a period of 220 days to bring the defendant to trial, and 90 days if he is incarcerated. It cannot be said as a matter of law that the delay between the first and second trial was either inordinate or unreasonable.

2. Reason for the delay. We note that the second trial was caused by the mistrial of the first and this mistrial was

for the protection of the defendant and had initially been requested by him. Further, immediately after the first trial counsel for defendant at that trial withdrew and new counsel was appointed on April 19, 1977. Obviously time for preparation for trial was required and the trial court, to assure effective assistance of counsel to the defendant, could not, as he might had counsel remained the same, set the case for retrial at once. On May 5, 1977, the defendant requested a transcript of the testimony of the first trial presumably to assist such preparation, which motion was granted on May 12, 1977. Such transcripts take time to prepare, and we note the transcript herein filed was certified on June 7, 1977, prior to any appeal and hence, it may be assumed, was the transcript supplied and was only then available to counsel. The clerk's certificate for fees for such transcript is also dated June 7, 1977. Thereafter on June 9, 1977, defendant filed a motion to suppress evidence, which required undoubtedly some time for preparation and consideration by both sides. Trial and hearing upon the motion was held on June 16, 1977. Under the circumstances we find that good and sufficient reason for the expiration of the 76 days from the first trial to the second trial existed.

3. Asserting of the right. The right was first asserted on May 5, 1977, by motion based entirely upon the statutory time limit of 90 days, which the trial court ruled correctly was not applicable. The second motion for discharge filed June 16, 1977, the day set for trial, was also predicated solely upon the statute and did not assert the more general constitutional right. However, the trial proceeded immediately, the defendant changing his plea to no contest. The statutory right was therefore asserted but no assertion of the constitutional issue was made. A demand for trial in fact was not made, only a demand for discharge under the statute. Considering this broadly, however, it may be said the right was timely asserted.

4. Resulting prejudice. Since there was a change of plea to no contest there is no affirmative showing any witnesses were prevented from testifying by the passage of time, or that the defense was in any way hampered thereby in the presentation of a defense.

Balancing all these factors, we find that there was no

unreasonable or inordinate passage of time between the first and second trials, that good reasons existed for the delay, that the assertion of the right to a speedy trial was solely on the basis of a statutory schedule inapplicable to the situation involving a second trial, and that little or no prejudice resulted. The defendant was not therefore denied a speedy trial either under the Ohio Statute or under the United States or the Ohio Constitution.

The assignment of error is not well taken.

This being the case, the judgment of the trial court is affirmed.

*Judgment affirmed.*

MILLER, P. J., and GUERNSEY, J., concur.