[Cite as *State v. Hare*, 2022-Ohio-1931.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210321 |
| | | TRIAL NO.  C-20CRB-22709 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| BRANDON HARE, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 8, 2022


*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Judith Anton Lapp,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *Krista M. Gieske,* Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1}    Defendant-appellant Brandon Hare was charged with one count of assault for allegedly hitting his ex-girlfriend, Regina Pugh, and pushing her to the ground. The matter proceeded to a bench trial before Judge Heather Russell on May 3, 2021. There was a disagreement between defense counsel and Judge Russell that led Judge Russell to sua sponte orally declare a mistrial and recuse herself. On the "Judge's Sheet,"[1] Judge Russell wrote, "Court recuses – rerolls," but did not explain her recusal or state that a mistrial had been declared.

{¶2}    The case was transferred to Judge Gwen Bender. Hare moved to dismiss the assault charge on double-jeopardy grounds. A hearing on the motion to dismiss was held on May 27, 2021. Judge Bender denied the motion, finding that Judge Russell had declared a mistrial because she no longer felt that she could remain fair and impartial toward Hare due to "butting heads" with defense counsel. That same day, the state filed a motion requesting that Judge Russell issue a nunc pro tunc entry "clarifying that a mistrial was declared on this matter." Judge Russell issued a nunc pro tunc entry on June 1, 2021, wherein she wrote on the Judge's Sheet, "Based on defense attorney's statements, the court declares a mistrial, recuses, and requests that the case be re-rolled."

{¶3}    Hare has appealed the denial of his motion to dismiss, arguing in one assignment of error that double jeopardy bars a retrial on the assault charge. Hare has also filed a complaint for a writ of prohibition in the case numbered C-210344 requesting that Judge Russell's June 1, 2021 nunc pro tunc entry be vacated and that this court restrain Judge Russell from issuing any further orders related to his case.

---

[1] *See Cincinnati v. Walker*, 1st Dist. Hamilton No. C-070770, 2008-Ohio-4473, ¶ 5 (explaining the use of the "Judge's Sheet" in Hamilton County Municipal Court).

The complaint for a writ of prohibition is addressed in a separate opinion released contemporaneously with this opinion. Because in that case we granted the writ and vacated the entry, we will not be considering Judge Russell's June 1 entry in deciding this appeal.

### *The Mistrial*

**{¶4}**   The state cites three exchanges between defense counsel and Judge Russell that it claims supports Judge Bender's finding that Judge Russell declared a mistrial and recused because she believed that she could no longer remain fair and impartial.

**{¶5}**   The first exchange occurred before trial. Defense counsel sought to introduce evidence of Pugh's prior convictions under Evid.R. 609 and gave the state written notice before trial pursuant to Evid.R. 609(B). On the morning of trial, defense counsel raised the issue with the court. The court asked why counsel had not provided the court with a written motion on the matter. Counsel responded, "I don't have to provide the court." The court said, "Not a courtesy copy, nothing? This is the first I'm hearing of it." The judge informed defense counsel that she would have liked a chance to research the matter before trial.

**{¶6}**   Next, during her opening statement, defense counsel stated, "You're also going to learn about a witness, a witness that was told to the police, a witness that has been in – looked for and subpoenaed for two months * * * After two months of seeking that witness, a new witness appeared, someone who hadn't been mentioned previously. Your Honor, based on all of the evidence, I do feel you're going to find him not guilty." The following exchange then occurred:

The Court: I could be wrong, but the last time that an issue came up about efforts to find a witness and commenting on proposed evidence that that witness is not appearing, the last I knew, that was not permissible by law.

Defense Counsel: My understanding is only if it's the other way. If the state isn't able to bring forward a witness, I am able to bring that up as the defense attorney because that would possibly raise reasonable doubt in the Court's mind.

The Court: Okay. I'm not hearing anything otherwise, we'll let it go.

{¶7} The final exchange occurred during defense counsel's cross-examination of Pugh. Pugh had testified that Hare had come to her apartment to discuss their relationship. Defense counsel asked Pugh if Hare had also come over to discuss money that Pugh owed him. Pugh denied that was part of the conversation. Defense counsel asked Pugh if she texted Hare and invited him over to talk about money that she owed him. The prosecutor objected on the grounds that defense counsel appeared to be holding documents depicting text messages that had not been provided to the state in discovery. The prosecutor argued that if there were text messages, they should be entered into evidence under the "best evidence rule." Defense counsel countered that she was not trying to introduce the text messages as evidence, she merely sought to question Pugh about the reason Hare came over. The court stated that defense counsel should have provided the text messages to the state in discovery pursuant to Crim.R. 16 because she intended to use the messages as evidence for impeachment purposes.

{¶8} The following exchange then occurred:

Defense Counsel: No I did not intend to use this. I'm using it as impeachment now with the information I have. I could not guess that the witness was not going to be honest about a text message.

The Court: I think you have the duty to disclose potential evidence –

Defense Counsel: Your Honor, I would ask for a brief recess because there is significant case law that states impeachment is –

The Court: A good trial lawyer would be prepared for that. Let's see it. Show me it.

Defense Counsel: I am asking for a brief continuance to go get it.

The Court: And I am saying, yes, show me. You might want to be looking for evidence to support your case as well.

{¶9} Defense counsel produced *State v. Loudermilk*, 2017-Ohio-7378, 96 N.E.3d 1037, ¶ 10 (1st Dist.) (holding that mere impeachment evidence need not be disclosed by the defense in discovery) and the state agreed that *Loudermilk* was "on point." Thereafter, the following discussion transpired:

The Court: Okay. So the objection is overruled. However, again, I may be wrong. It's been a while. Of course, we've all had a year without many trials. It seems to me that the last time that I had to rule on a case in this situation, that the proper way to impeach a witness on an extrinsic piece of evidence is in this manner: The attorney questions the witness, shows them the extrinsic piece of evidence, and gives them a chance to explain or deny it.

Defense Counsel: Your Honor, that's not the way I do impeachment.

The Court: Pardon me?

Defense Counsel: That's not the way I do impeachment. We all -- and that is not the way we are trained. I understand what you're saying.

The Court: That is the way I do impeachment if you want to research that. So you can ask your question.

Defense Counsel: I think I was -- I think I -- I mean, I was done. My question had completed.

The Court: Well, you have to show her the piece of information you're -- by which you're attempting to impeach her.

Defense Counsel: No, I don't because I'm not presenting it as evidence. I'm simply asking if she recalls saying this. If she says no, the Court can take that as no or the Court can take that as whatever they want. I don't have to provide anything, because if I start giving this, that's when more issues -- because I don't have to give her -- I can give her the opportunity to say, yes or no.

The Court: You know what? I'm going to recuse from this case. I'm going to call a mistrial because, quite frankly, I don't like you telling me what you have to do and don't have to do. I was politely issuing some suggestions and some guidance. We are not managing very well here --

Defense Counsel: Your Honor.

The Court: -- together and so I'm going to recuse and I am calling a mistrial, and you can re-roll it.

Defense Counsel: Thank you, Your Honor.

The Court: Court is adjourned.

### *Double Jeopardy*

**{¶10}** In his sole assignment of error, Hare argues the trial court erred in denying his motion to dismiss the assault charge on double-jeopardy grounds.

**{¶11}** "The Double Jeopardy Clause of the United States Constitution prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 10, citing *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). Additionally, Section 10, Article I of the Ohio Constitution provides, "No person shall be twice put in jeopardy for the same offense." *Brown* at ¶ 10. These protections are coextensive. *State v. Mutter*, 150 Ohio St.3d 429, 2017-Ohio-2928, 82 N.E.3d 1141, ¶ 15. In a bench trial, jeopardy attaches when the judge begins receiving evidence. *State v. Meade*, 80 Ohio St.3d 419, 424, 687 N.E.2d 278 (1997).

**{¶12}** Appellate courts review de novo the denial of a motion to dismiss an indictment on the grounds of double jeopardy. *State v. Anderson*, 148 Ohio St.3d 74, 2016-Ohio-5791, 68 N.E.3d 790, ¶ 20, citing *In re Ford*, 987 F.2d 334, 339 (6th Cir.1992). In so doing, we examine the record of the initial trial. *In re Ford* at 339.

**{¶13}** "In evaluating whether the declaration of a mistrial was proper in a particular case, [the Ohio Supreme Court] has declined to apply inflexible standards, due to the infinite variety of circumstances in which a mistrial may arise." *State v. Glover*, 35 Ohio St.3d 18, 19, 517 N.E.2d 900 (1988). Instead, a reviewing court should give "great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation

in his courtroom warrants the declaration of a mistrial." *Id.* "In examining the trial judge's exercise of discretion in declaring a mistrial, a balancing test is utilized, in which the defendant's right to have the charges decided by a particular tribunal is weighed against society's interest in the efficient dispatch of justice." *Id.* "Where the facts of the case do not reflect unfairness to the accused, the public interest in insuring that justice is served may take precedence." *Id.*

{¶14} A trial court may declare a mistrial, sua sponte, if there is a manifest necessity or a high degree of necessity, or if the ends of public justice would otherwise be defeated. *State v. Widner*, 68 Ohio St.2d 188, 189, 429 N.E.2d 1065 (1981); *Arizona v. Washington*, 434 U.S. 497, 506, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).

> Unlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused. Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes *subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury.*

(Emphasis in original.) *Widner* at 191, quoting *Washington* at 505.

{¶15} "To be sure, [the power to declare a mistrial and subject the defendant to retrial] ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *United States v. Wilson*, 420 U.S. 332, 357,

95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), fn. 12, quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824).

### Manifest Necessity and the Ends of Public Justice

{¶16} Manifest necessity does not require strict necessity. *Glover,* 35 Ohio St.3d at 19, 517 N.E.2d 900. The fact that other judges might have resorted to alternative means of dealing with the situation is not dispositive. *Id.* at 19-20. The concept of " 'the ends of public justice' has also been more precisely described as 'the public's interest in fair trials designed to end in just judgments.' " *Widner*, 68 Ohio St.2d at 190, 429 N.E.2d 1065, quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

{¶17} Judge Russell did not explain her precise reasoning on the record or the Judge's Sheet, but she did make statements on the record immediately before she declared the mistrial. After her disagreement with defense counsel about the proper way to impeach a witness, Judge Russell stated:

> You know what? I'm going to recuse from this case. I'm going to call a mistrial because, quite frankly, *I don't like you telling me what you have to do and don't have to do. I was politely issuing some suggestions and some guidance. We are not managing very well here * * * together* and so I'm going to recuse and I am calling a mistrial, and you can re-roll it.

(Emphasis added.)

{¶18} Hare contends this court must speculate as to why Judge Russell declared a mistrial, and therefore, there is no evidence to support a finding of manifest necessity. The state argues that we can discern from the statements Judge Russell made on the record that she declared a mistrial because she believed she could

not be fair and impartial. This is what Judge Bender concluded when she denied the motion to dismiss.

{¶19} We find that Judge Russell's statements on the record are sufficient for purposes of determining her intent. *See, e.g., Washington*, 434 U.S. at 516-517, 98 S.Ct. 824, 54 L.Ed.2d 717 (holding that an explicit finding of "manifest necessity" is not required; "[s]ince the record provides sufficient justification for the state-court ruling, the failure to explain that ruling more completely does not render it constitutionally defective.").

{¶20} We do not agree with Hare that we must engage in speculation in order to determine why Judge Russell declared the mistrial. Indeed, there is really no explanation for the mistrial other than the fact that the judge felt disrespected and was so offended that defense counsel would not take her advice on how to try the case that she felt she could not fairly and impartially continue as the trier of the facts in the case.

{¶21} According to Hare, the exchanges between defense counsel and the court were not "heated," and did not justify a belief by the judge that she could not be fair and impartial. Hare cites *Glover v. McMackin*, 950 F.2d 1236, 1241-1242 (6th Cir.1991), where the Sixth Circuit held that a "virtual shouting match among counsel and the bench is in itself insufficient to merit a mistrial." The Sixth Circuit held that "[h]ostile, even shouted, questioning can be controlled without aborting the trial." *Id.* at 1242.

{¶22} We agree that such disagreements with counsel should not typically offend a judge so much that she feels she could not serve as a fair and impartial trier of fact, but that is what happened in this case.

**{¶23}** Hare points out that Judge Russell abruptly declared a mistrial and adjourned court. She did not seek any input from the attorneys and there is no indication that she considered any alternatives, such as a continuance to relieve some of the tension between her and defense counsel, as we have previously suggested a trial court should do. *See State v. Douthard*, 1st Dist. Hamilton Nos. C-000354 and C-000355, 2001 Ohio App. LEXIS 2895, *14 (June 29, 2001) ("At least some effort on the part of the trial court to explore alternatives must be apparent before a high degree of necessity is demonstrated."). But *Douthard* involved improper comments made by defense counsel in front of a jury. *Douthard* at *14. And according to the Ohio Supreme Court in *Glover*, failing to consider alternatives or hear from the parties does not necessarily mean that a manifest necessity for a mistrial did not exist. *See Glover*, 35 Ohio St.3d at 19-20, 517 N.E.2d 900 (upholding the trial court's declaration of a mistrial despite the fact that it found declaring a mistrial in such a "summary manner" was "perhaps ill advised").

**{¶24}** We find that the record supports Judge Bender's conclusion that Judge Russell declared a mistrial because she felt that she could no longer be fair and impartial. This was a bench trial and not a jury trial. Thus, Judge Russell was the one and only person who would determine Hare's guilt or innocence. Judge Russell's determination is entitled to deference, lest we encourage trial judges to proceed with a biased attitude and potentially render unjust verdicts. "It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law." *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 48. Therefore, a manifest necessity existed warranting a mistrial.

**{¶25}** Furthermore, we find that under the unique circumstances of this case, the public interest in fair trials designed to end in just judgments was best served by ordering a mistrial. To be sure, being subjected to multiple prosecutions imposes substantial burdens upon a defendant. *See Washington*, 434 U.S. at 508, 98 S.Ct. 824, 54 L.Ed.2d 717. But, "[i]f [the trial judge] by virtue of personal feelings honestly and sincerely believes that [s]he cannot competently and effectively so act in an unbiased manner then the resulting trial would be a mockery of justice." *State v. Workman*, 60 Ohio App.2d 204, 208, 396 N.E.2d 777 (3d Dist.1977). Thus, "to achieve the ends of justice it was imperative that another judge conduct the trial, and to provide for this the declaration of a mistrial was appropriate." *Id.*

**{¶26}** This is not a case where intentional prosecutorial misconduct caused the mistrial. This is a case where a trial judge got upset with defense counsel for disagreeing with the judge on how she should be trying her case and seemed to believe that counsel was being disrespectful to her. Because Judge Russell believed that she could no longer be fair and impartial and therefore could no longer ensure a fair trial or deliver a just judgment, she did not abuse her discretion in declaring a mistrial so that an unbiased judge could preside over the case. Accordingly, Judge Bender did not err in denying Hare's motion to dismiss the assault charge on double-jeopardy grounds.

### *Conclusion*

**{¶27}** The sole assignment of error is overruled and the judgment of the trial court is affirmed.

Judgment affirmed.

**MYERS, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.