[Cite as *State v. Taylor*, 2023-Ohio-786.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220226 |
| | | TRIAL NO. B-2104363 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| PAUL TAYLOR, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: March 15, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters,* Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1}   Paul Taylor appeals his conviction and sentence, after a bench trial, for domestic violence.  In two assignments of error, Taylor contends his conviction was against the manifest weight of the evidence because the victim's testimony that he physically harmed her was not credible, and that the trial court erred in imposing sentence.  For the following reasons, we affirm the trial court's judgment in part, reverse the judgment in part, and remand the cause to the trial court.

## Factual Background

{¶2}   In August 2021, Paul Taylor was indicted for domestic violence in violation of R.C. 2919.25(A) for physically harming Virginia Davidson, a felony of the fourth degree due to a prior conviction.  After a bench trial, the court found him guilty and sentenced him to 18 months of incarceration and ordered him to have no contact with the victim.

{¶3}   Taylor stipulated to the prior conviction and admitted that he and Davidson, his former girlfriend, had lived together for approximately seven months. The dispute at trial was whether Taylor physically harmed Davidson.

{¶4}   Davidson testified that she and Taylor began arguing while walking home from his job at Gold Star.  Davidson had met him at work after his shift ended. When she arrived, a guy grabbed her arm and asked her if she wanted to smoke marijuana.  She declined and entered the restaurant.

{¶5}   While walking home, Taylor criticized her for not fighting the guy who grabbed her arm and screamed at her while they walked home.  The argument continued after they entered the home. Davidson testified that when she put her arm on Taylor's leg, he warned her to remove it.  When she did not move it fast enough, Taylor "popped" her twice on her chin.  The "pop" caused no injuries.

**{¶6}** Afterwards, Davidson and Taylor walked to the store to purchase alcoholic beverages. When they got home, they started drinking and shooting baskets in the driveway. When they reentered the house, Taylor called her a "hoe" and started hitting her. Davidson fought back, and they continued to hit each other throughout the night.

**{¶7}** Davidson testified that Taylor forced her to her knees, placed his penis in her mouth, and made her call him by her father's name. Davidson began crying. When he stopped, she went to the bathroom. Taylor followed her to the bathroom and "pounded" the back of her neck. They continued to fight throughout the night, and Taylor continued to shove her, choke her, and beat her. Finally, Davidson convinced him to go to bed.

**{¶8}** The next morning, Taylor went to work, and Davidson called her sister. She went to her sister's home. Davidson had her sister take photos of the bruises on her arms and a bruise under her breast. The photos were admitted at the trial.

**{¶9}** When Davidson returned home at approximately midnight, she found Taylor sleeping on the couch. Taylor had broken into the home because he did not have a key. They exchanged words, and Taylor left. A few hours later, Davidson called the police.

**{¶10}** Officer Raymond Seehousen responded to Davidson's home at 3:00 a.m. Seehousen noted the damage to the doorjamb of the front door. After taking her statement, Seehousen filed the domestic-violence charge. Seehousen testified that Davidson's courtroom testimony regarding the altercations included many accusations and details that were not included in her statement to him.

**{¶11}**  Taylor testified on his own behalf and confirmed that Davidson and he argued as they walked home from Gold Star.  Taylor was mad that Davidson did not yell at the guy who grabbed her.  The arguing escalated to inappropriate name calling by both of them.  As they were sitting on the couch, they were arguing back and forth. Davidson and Taylor argued as they walked to the store and bought Monster energy drinks and continued to argue when they got home until 1:00 or 2:00 a.m. when they went to bed together.

**{¶12}**  The next day, Taylor overslept and was late for work.  Davidson did not want him to go to work, and they argued when he refused to skip work.  Taylor went to work.  Later, he went to the house to remove his belongings because he knew Davidson was not home.  Taylor returned to work and put his belongings in a garage owned by his boss.  Taylor worked until 9:00 p.m., then went to the house and fell asleep on the bed while waiting for Davidson to return.  When he heard Davidson arrive, Taylor went outside to speak to her.  He had words with her sister and left.

**{¶13}**  Taylor denied hitting her, sexually assaulting her, choking her or having any physical altercations with her.

**{¶14}**  The trial court found that the stories were a bit hard to follow, but that it all came down to credibility and whether she believed Davidson or Taylor.  The trial court summarized the evidence and found Taylor guilty.  The court sentenced Taylor to 18 months of incarceration and ordered him not to have contact with the victim.

### Manifest Weight of the Evidence

**{¶15}**  In his first assignment of error, Taylor contends that the conviction is contrary to the manifest weight of the evidence because the victim's testimony that he physically harmed her was not credible.

**{¶16}**  In reviewing a weight-of-the-evidence claim, we review " 'the entire

record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 59, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). "[I]it is well settled law that matters as to the credibility of witnesses are for the trier of fact to resolve." *State v. Ham*, 1st Dist. Hamilton No. C-170043, 2017-Ohio-9189, ¶ 21. " 'When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony.' " *State v. Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, ¶ 29, quoting *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

{¶17} The trial court heard all of the testimony, summarized the evidence, acknowledged that the issue was credibility, and found Taylor guilty. The court found Davidson's testimony to be the more credible version of events. The trial court was in the best position to observe the witness's testimony and assess the witness's demeanor and credibility. We cannot say that the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶18} Accordingly, we overrule the first assignment of error.

## Sentencing

{¶19} In his second assignment of error, Taylor contends the trial court erred by imposing a no-contact order in addition to a prison sentence. We have previously determined that the imposition of a prison term precludes the trial court from ordering "no-contact." *State v. Tolbert*, 1st Dist. Hamilton No. C-170711, 2019-Ohio-2557, ¶ 32.

5

The state concedes the error. We sustain the assignment of error, and remand the cause to the trial court to vacate the no-contact order.

## Conclusion

{¶20} We sustain Taylor's second assignment of error and remand the cause to the trial court with instructions to vacate the no-contact order. We affirm the trial court's judgment in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry this date.