[Cite as *State v. Hare*, 2023-Ohio-3583.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230008 |
| | | TRIAL NO. C-20CRB-22709 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| BRANDON HARE, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 4, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Law Office of Michele L. Berry, LLC,* and *Michele L. Berry*, for Defendant-Appellant.

**CROUSE, Presiding Judge.**

{¶1} Defendant-appellant Brandon Hare appeals his conviction for misdemeanor assault on the basis that his conviction is against the manifest weight of the evidence. Hare's conviction stems from an altercation that occurred while he was attempting to retrieve property that he had left at the home of his former girlfriend, Regina Pugh. Hare argues that Pugh's testimony was not credible because of variations in her story over time. Hare also argues that the trial court erroneously found that he admitted to committing the offense while testifying. For the reasons that follow, we affirm the judgment of the trial court.

### I. Factual and Procedural History

{¶2} Hare and Pugh had been in a relationship, during which Hare had stored some personal property at Pugh's apartment. Around October 2020, the two had broken up when Hare had declined Pugh's invitation to move in with her. A dispute arose over the return of some of Hare's property, eventually necessitating Hare to involve the Reading Police to assist in recovering a laptop and some of his clothes. Hare claims that Pugh still had an unspecified amount of money he had left there, as well as a Bluetooth speaker. Hare repeatedly contacted Pugh by phone, text, and various apps in an attempt to recover his property.

{¶3} Shortly before Thanksgiving 2020, Pugh texted Hare to ask for the address of his post-office box where she could send his money. During the text conversation, Hare and Pugh made plans for Hare to come to her apartment for Thanksgiving. Hare visited briefly on Thanksgiving Day, but he eventually left to visit his brother. Hare returned to have dinner with Pugh the next day.

{¶4} Hare testified that Pugh made sexual advances toward him, which he

2

rebuffed. As he was leaving Pugh's apartment, Hare asked again about his money and Bluetooth speaker. Pugh cut off that conversation and showed Hare to the door. Hare then told Pugh that he wanted to check the closet by the door for his speaker. Hare began to rummage in the closet, looking for the speaker, when Pugh pulled him away by the waist of his pants. Hare claimed that he pulled his pants out of Pugh's grasp, and in the struggle, Pugh hit her head on the wall. Hare also claimed that Pugh slapped him in the face as he left the apartment.

{¶5}   Pugh's version of events was quite different. She testified that she had taken dinner downstairs to a neighbor and when she returned to her apartment, she found Hare rummaging through a closet. She claimed that when she confronted Hare about going through her things, Hare punched her in the face with a closed fist. He then pushed her against the wall, causing her to hit the back of her head and fall to the ground. Pugh then demanded that Hare leave, and he did. A neighbor called 9-1-1, and officers from the Reading Police Department responded. Pugh did not receive medical attention for her injuries.

{¶6}   Officer Samuel Cole of the Reading Police Department testified that Pugh had reported being pushed by Hare, but he did not remember whether she had said anything about being punched.

{¶7}   Hare was convicted following a bench trial of one count of assault, a first-degree misdemeanor, in violation of R.C. 2903.13(A). Hare was sentenced to 180 days in jail, with 179 days suspended and 1 day of credit, and 18 months of community control during which Hare would be under "strict supervision" with random urine screening; serve 60 days of house arrest on EMD, with limited permission to be out for work and church; have no contact with Pugh; complete an anger-management

program; and pay a $50 fine and court costs. This appeal timely followed.

## II. *Analysis*

**{¶8}** In his sole assignment of error, Hare argues that his conviction was against the manifest weight of the evidence. Hare argues that Pugh's testimony lacked credibility because her story changed from the police report to her testimony at the first trial to the second trial.[1] Hare also argues that the court based its finding of guilt on its erroneous belief that he admitted during his testimony to pushing Pugh.

**{¶9}** In reviewing whether a conviction is against the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We will review "the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 59, quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). However, we will reverse the trial court's decision to convict and grant a new trial only in "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *Martin* at 175.

**{¶10}** Hare was convicted of assault in violation of R.C. 2903.13(A). That statute provides, in relevant part, that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *." R.C. 2903.13(A).

**{¶11}** Hare complains that Pugh's testimony was inconsistent over time, and

---

[1] This case was previously tried to the bench before a different judge and ended in a mistrial after the judge recused herself. *See State v. Hare*, 1st Dist. Hamilton No. C-210321, 2022-Ohio-1931.

that each time she recounted the story, Hare's conduct was "more violent and egregious." Hare insists that the text messages he introduced into evidence demonstrate that his version of events is accurate and show that Pugh's version is false. Finally, Hare complains that the trial court erroneously found that he had admitted to conduct constituting the offense.

{¶12} The trial court is in the best position to observe the witness's demeanor and assess the witness's credibility. *State v. Taylor*, 1st Dist. Hamilton No. C-220226, 2023-Ohio-786, ¶ 17. Defense counsel cross-examined Pugh on the inconsistencies in her statements. A review of the record demonstrates that Pugh was always consistent that Hare had pushed her, causing her to hit her head. The inconsistency in her testimony had to do with her additional contention that Hare had punched her. Hare also testified to his version of the events. The court had to decide which version to believe.

{¶13} In rendering its verdict, the court stated, "I don't find that she was making this up." Thus, despite the inconsistencies, the court found that Pugh's testimony was credible.

{¶14} The text messages that Hare introduced to corroborate his version of events fail to persuade us that the court lost its way in believing Pugh's testimony. While the text messages do corroborate some of Hare's testimony, such as Pugh's acknowledgement that she owed Hare money, the texts do not contradict Pugh's testimony as to the assault. Hare categorizes Pugh's final text message to him as an apology for Pugh having hit him while leaving her apartment. The message reads: "You are done you called while the police and witnesses were here. Oops up your freaking head. [astonished-face emoji] [disappointed-face emoji]." The message could be

interpreted, consistent with Pugh's testimony, to say that Pugh had told the police what happened, and now Hare will face the consequences through the criminal justice system.

{**¶15**} Finally, Hare argues that the court's finding of guilt is tainted by the court's unsupported assertion that Hare had admitted in his testimony to pushing Pugh. The trial court noted, "The defendant's testimony was, in fact, he did push her away and she did fall down." Hare is correct that this assertion is not supported in the record. Hare did not admit to pushing Pugh. Rather, he claimed that she fell and hit her head on the wall when he was struggling to get away from her. However, the court did not base its guilty finding solely on its erroneous recollection that Hare admitted to pushing Pugh. The court found that Pugh's narrative of events, at least as to the punch and resulting injury, was credible. The court noted, "In looking at what the victim testified, she was specifically asked if she was hurt from this. She indicated that both the punch and the fall hurt when he did this. * * * I don't find that she was making this up." Thus, the court based its verdict on its belief in Pugh's version of the events.

{**¶16**} Considering all the evidence, as well as the trial court's finding that Pugh was credible, the evidence does not weigh heavily against the conviction. Although the record does not support the finding that Hare admitted to the offense, this finding was not necessary to find Hare guilty. While Pugh's testimony did exhibit some inconsistencies, those inconsistencies were not so egregious as to undermine her credibility as to the basic elements of assault. This is not an exceptional case where the evidence weighs heavily against the conviction.

### III. Conclusion

{**¶17**} Hare's sole assignment of error is overruled, and we affirm the

judgment of the trial court.

Judgment affirmed.

**WINKLER** and **KINSLEY, JJ.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.