# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250601 |
| | | TRIAL NO. B-2500242 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| SAMBA DIALLO, | : | |
| | | *JUDGMENT ENTRY* |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 6/26/2026 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *State v. Diallo*, 2026-Ohio-2434.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                      :       APPEAL NO.    C-250601
                                            TRIAL NO.     B-2500242
      Plaintiff-Appellee,        :

  vs.                              :

SAMBA DIALLO,                       :
                                            *O P I N I O N*
      Defendant-Appellant.       :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 26, 2026


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Cohen, Todd, Kite & Stanford, LLC, John L. O'Shea,* and *Hailey E. Martin* for Defendant-Appellant.

**KINSLEY, Presiding Judge.**

{¶1} Defendant-appellant Samba Diallo appeals the trial court's judgment denying his motion to dismiss and finding him guilty of vehicular assault. Raising three assignments of error, Diallo argues that his conviction was not supported by sufficient evidence, that his conviction was against the manifest weight of the evidence, and that the trial court erred in denying his motion to dismiss based on double jeopardy.

{¶2} After reviewing the record, we disagree with Diallo's arguments. We therefore affirm the judgment of the trial court.

### *Background*

{¶3} On March 10, 2025, the State indicted Diallo for two counts of vehicular assault. Diallo was charged in Count 1 for recklessly operating a vehicle in a construction zone in violation of R.C. 2903.08(A)(2)(a) and in Count 2 for recklessly operating his vehicle in violation of R.C. 2903.08(A)(2)(b). Both counts were felonies of the fourth degree.

{¶4} On July 28, 2025, Diallo filed a motion to dismiss the indictment on the basis of double jeopardy. In it, he contended that he had previously been convicted of violating Village of Lockland Ordinance 432.38, "Weaving; Full Time and Attention," and that his conviction for that traffic offense barred a subsequent prosecution for vehicular assault arising from the same accident.

{¶5} On August 4, 2025, the trial court denied Diallo's motion. In doing so, it found that the vehicular assault statute requires proof of recklessness and serious physical harm, elements that are not required by the Lockland ordinance. It therefore concluded that the Double Jeopardy Clause did not apply.

{¶6} On October 3, 2025, the matter proceeded to trial. The State called four

witnesses: (1) M.A., (2) N.G., (3) A.K., and (4) Officer Brandon Blair.

**{¶7}** M.A. testified that she worked for Adleta Construction as a construction laborer on an asphalt restoration crew. On December 20, 2024, M.A. staffed a job on Anthony Wayne Avenue. M.A.'s assignment was to serve as a flagger, meaning that she helped divert traffic by holding a large "slow stop" sign. According to M.A., one side of the sign said "slow," while the other said "stop." M.A. had a partner at the other end of the construction zone who held the same type of sign. She wore a reflection vest and hard hat.

**{¶8}** At the time of the incident, M.A. was standing in the street holding the sign, with the "stop" side facing toward cars coming towards her. M.A. turned to look toward her partner to see if he had changed his sign when she was hit from the back by a car. The incident was captured on the dash camera of one of the construction vehicles. The footage of the camera was authenticated by M.A. and admitted into evidence.

**{¶9}** After being hit, M.A. was taken to Jewish Hospital. She had excruciating pain in her left knee. M.A. was diagnosed with a fractured tibia and fractured fibula in her left leg. Her injuries did not require surgery, but she was required to wear a boot for approximately eight weeks.

**{¶10}** N.G., an Adleta construction worker, testified that on the day of the incident, he operated a jackhammer on the same crew as M.A. While he was digging, N.G. saw the dump truck driver get out of his truck and run to M.A., who had been hit by a car. N.G. also assisted M.A. He additionally took photographs of the scene, which were admitted into evidence.

**{¶11}** N.G. testified that the windshield of the vehicle that struck M.A. appeared to be frozen over. Because of this condition, N.G. could not initially discern

that there were two individuals in the vehicle.

{¶12} A.K., Adleta's construction foreman, testified that while he was digging, he looked up and saw M.A. on the ground. A.K. yelled for other workers to help her. M.A. called 9-1-1, and the 9-1-1 call was admitted into evidence. To A.K. the windows of the vehicle that struck M.A. looked completely white, like someone had been vaping inside. Like N.G., A.K. was unable to tell that there were two people in the vehicle.

{¶13} Officer Brandon Blair, a Lockland police officer, testified that officers were dispatched to the scene of an auto accident involving a pedestrian who had been struck by a vehicle. When he arrived, M.A. was lying on the ground and complaining about her left leg. Blair noticed that the windshield of the vehicle that struck M.A. looked fogged. Blair issued a traffic ticket to Diallo, the driver of the vehicle, but informed him that if M.A. had been injured, Diallo would later go to jail. This interaction was captured on Blair's body-worn camera footage, which was admitted into evidence.

{¶14} Blair later interviewed M.A. at the hospital. Blair then requested grand jury review and contacted the prosecutor's office, as he believed that Diallo was driving with obstructed vision when he struck M.A. Blair later arrested Diallo for vehicular assault.

{¶15} On cross-examination, Blair acknowledged that Diallo had a valid driver's license and insurance, that the vehicle had no defects, that Diallo was traveling below the posted speed limit, and that he was cooperative the entire time.

{¶16} In its closing argument, the State argued that Diallo was reckless because he drove with a foggy windshield, thereby consciously disregarding the potential risks of not being able to see the road in front of him. Defense counsel argued that the State failed to prove that the incident occurred in a construction zone, a

required element for Count 1. Defense counsel also argued that the State failed to prove that Diallo's windshield was obstructed and that his actions were reckless.

**{¶17}** The trial court convicted Diallo of Count 2 for recklessly operating his vehicle without clearing his fogged windshield. As to Count 1, the trial court ordered the parties to brief the issue of whether the incident occurred in a construction zone. But on October 22, 2025, the State voluntarily dismissed Count 1. The trial court then sentenced Diallo to 36 months of community control on Count 2 and suspended his driver's license for 48 months. The trial court also ordered that Diallo pay court costs and denied his request for a stay pending appeal.

**{¶18}** Diallo appeals.

## I. Analysis

**{¶19}** On appeal, Diallo raises three assignments of error: (1) that his conviction was not supported by sufficient evidence, (2) that his conviction was against the manifest weight of the evidence, and (3) that the trial court erred by denying his motion to dismiss.

### A. Sufficiency of the Evidence

**{¶20}** In his first assignment of error, Diallo argues that his conviction is based on insufficient evidence because the State failed to prove that he acted recklessly.

**{¶21}** To determine whether a conviction is supported by sufficient evidence, we inquire "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *State v. Curry*, 2020-Ohio-1230, ¶ 11 (1st Dist.).

**{¶22}** To prove that Diallo committed the offense of vehicular assault under R.C. 2903.08(A)(2)(b), the State was required to prove that Diallo, while operating a

motor vehicle, recklessly caused M.A. serious physical harm. Diallo does not challenge the proof that he operated a motor vehicle and that M.A. suffered serious physical harm. Therefore, the only question before us is whether Diallo acted recklessly.

**{¶23}** R.C. 2901.22 governs the degrees of culpability attached to mental states. Pursuant to R.C. 2901.22(C), a person acts reckless when they act with a "heedless indifference to the consequences" disregarding "a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." *See State v. Pegues*, 2026-Ohio-2072, ¶ 10 (5th Dist.).

**{¶24}** In this case, the evidence is substantial that Diallo acted recklessly when driving his vehicle. The evidence at trial, and in particular the video of the incident that was captured by the construction vehicle's dash cam, demonstrated that Diallo drove in M.A.'s direction for more than 20 seconds down a straight road before hitting her with his vehicle. During that time, M.A. stood in the street with a large sign that said "stop," was wearing a reflective vest and a hard hat, and was surrounded by orange construction cones. Despite the fact that M.A. was plainly visible in the road, and despite the fact that Diallo had more than 20 seconds to observe her presence, he did not slow down or stop. On the contrary, the footage shows that Diallo's vehicle plowed right into M.A. at the same speed that it had been traveling.

**{¶25}** In *State v. Nastal*, 2022-Ohio-970, ¶ 30-32 (6th Dist.), the Sixth District had no trouble concluding that a truck driver acted recklessly for purposes of the vehicular assault statute when he approached a clearly marked construction zone but failed to adequately slow down, crashing into other cars. A similar situation occurred here. M.A. was clearly visible in the roadway, but Diallo hit her without attempting to avoid her. Altogether the evidence shows that M.A. was in the road for approximately 20 seconds before she was hit, that M.A. was standing clearly

in the middle of the street and the view of her was not obstructed, that M.A. was wearing a reflective vest and had a large "stop" sign in her hand, that Diallo did not attempt to avoid hitting her, and that Diallo was driving with a possibly obstructed windshield. The evidence therefore shows that Diallo acted with heedless indifference to the consequences of his actions and disregarded a substantial and justifiable risk that his conduct was like to cause serious physical harm to her.

{¶26} Therefore, construing the evidence in the light most favorable to the State, we overrule Diallo's first assignment of error.

## B. Manifest Weight

{¶27} In his second assignment of error, Diallo argues that his conviction is against the manifest weight of the evidence because the evidence showed that he was negligent and not reckless.

{¶28} When reviewing whether Diallo's conviction is against the manifest weight of the evidence, we sit as the "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "A verdict can be against the manifest weight of the evidence even though legally sufficient evidence supports it." *State v. Myers*, 2018-Ohio-1903, ¶ 140. To evaluate a manifest weight challenge, the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of all witnesses. *State v. McKelton*, 2016-Ohio-5735, ¶ 328. The court then questions whether the trier of fact clearly lost its way in resolving evidentiary conflicts and rendered a verdict that embodies a manifest miscarriage of justice. *State v. Wilks*, 2018-Ohio-1562, ¶ 52.

{¶29} As the Sixth District held in *Nastal*, Diallo's claim that he did not see M.A. "does not negate the evidence of recklessness." *See Nastal*, 2022-Ohio-970, at ¶ 36 (6th Dist.). Even if it is true that Diallo could not see M.A., the evidence reflects

that the crash was the product of "extreme inattention," as it was in *Nastal*. *Id*. at ¶ 37. Diallo's car travelled down the straight and unobstructed road for more than 20 seconds, where M.A. was standing. She was wearing a brightly colored vest, was carrying a large sign, and was surrounded by orange traffic cones. To have not seen her for 20 seconds is not the product of a lapse in care, as would occur when a person is negligent. *See* R.C. 2901.22(D) (defining negligence as a "substantial lapse from due care"). Rather it is the product of heedless indifference to the roadway.

{¶30} Therefore, we overrule Diallo's second assignment of error.

### C. Motion to Dismiss

{¶31} In his third assignment of error, Diallo argues that his conviction for vehicular assault violated his right to be free from double jeopardy.

{¶32} The Double Jeopardy Clause of the United States Constitution prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *State v. Hare*, 2022-Ohio-1931, ¶ 8 (1st Dist.). We review the denial of a motion to dismiss an indictment on the grounds of double jeopardy de novo. *Id.*

{¶33} "The Double Jeopardy Clause bars successive prosecutions for the same event or act if the two offenses that arise from the event or act are ultimately considered the same offense on the basis of the comparison of the elements." *State v. Braden*, 2018-Ohio-563, ¶ 16 (1st Dist.), citing *Blockburger v. United States*, 284 U.S. 299 (1932). "[T]he test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." (Cleaned up.) *Id.* If each offense contains an element which the other does not, there is no double jeopardy violation. *State v. Mutter*, 2017-Ohio-2928, ¶ 17.

{¶34} Under this standard, there is no double jeopardy violation here. R.C.

2903.08(A)(2)(b) requires proof of serious physical harm to convict a defendant of vehicular assault, an element that is entirely missing from "Weaving; Full Time and Attention," as defined by Village of Lockland Ordinance 432.38. The trial court did not err in denying Diallo's motion to dismiss on this basis.

{¶35} Therefore, we overrule Diallo's third assignment of error.

## II. Conclusion

{¶36} For the foregoing reasons, we overrule Diallo's three assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**BOCK** and **NESTOR, JJ.,** concur.